EMILY HOWARD, ADMINISTRATRIX OF THE ESTATE OF JOSEPH
PARDEE v. JOSEPH PATRICK, ADMINISTRATOR OF
THE ESTATE OF JOHN W. PARDEE.

*Exclusion of testimony—Impeachment—Admissibility of evidence—
Error must be shown by the record—Partnership.*

In a litigation between two estates as to the right to property which
defendant's intestate claimed as surviving partner, a question at
issue was the amount of live stock kept by the decedents at a
certain time. *Held* that evidence as to how many cattle there
were before the building of a certain shed that had been put up
in the life-time of plaintiff's intestate, and as to how they had
been cared for the winters before and after his death, was not
material.

An exception to the general rule of the competency of testimony
must come fairly within the statute excluding it.

Testimony cannot be excluded as equally within the knowledge of a
deceased opponent unless it comes fairly within Comp. L., § 5968;
and where enough does not appear to indicate that the witness'
knowledge was necessarily so obtained as to exclude it, the proper
ruling would be to restrict the examination to such matters as
were not within the excluding rule.

Impeaching testimony is governed by strict rules as to relevancy,
and ought not to be received unless clearly competent.

P's administratrix, who was his daughter, brought suit for the estate
against the estate of P's son as for property converted by the
latter. The administratrix testified that she and her sisters
were to have had a certain amount from their father's estate,
and that settlements had been made accordingly. Evidence that
before she was administratrix she had said she had no claim
against the defendant estate was offered by way of impeach-
ment. *Held* that it was foreign to the issue, which was the
son's liability, and the fact whether or not the administratrix had
any private interest left in her father's estate had no bearing on
the question whether the father or son owned the property in
dispute. But questions relating directly to the father's disposal
of his property to his sons during his life-time, bore on the issue
and were proper for impeachment.

In showing the admissions of a witness for purposes of impeachment,
the time and place of the admissions should be given with cer-
tainty.

It is not necessarily important that a plaintiff should show why a
certain line of proof was not introduced on a former hearing.

43 MICH.—16.

Where it was claimed in defense to a suit for converted property, that the defendant took it by right of survivorship as partner, testimony that he lacked means was immaterial and had no tendency to disprove the partnership relation, which would have to be made out.

The existence of litigation over property is enough, in the absence of a defense showing a right to it, to render immaterial any evidence that there had been no settlement.

Where the record does not show what answer a witness gave to a question that might have been proper, the appellate court cannot know that there was any injury in admitting it. There is no presumption of error.

Cross-examination of a witness as to his contribution to the expenses of the suit, bears on his interest or bias, and is admissible.

Proof of the character of parties is allowed in criminal cases, but rarely as independent testimony in civil suits, though it might perhaps be proper to cross-examine a witness thereon where it would bear on his belief as to their sincerity.

In an action by one estate against another, the fact that the administrator of the latter had presented a claim against the former can have no bearing on the relations of the two intestates, though if his decedent had lived and presented the claim, it might possibly have shown inconsistency in his position.

Testimony that the widow of an intestate continued in possession of the property at the homestead, bears on the claim that the son had converted it.

Where the defense to a suit for converted property was that defendant had taken it as surviving partner, testimony as to his business capacity would not be relevant standing alone, but might not be prejudicial if connected with evidence of the extent and manner of his management and the trust reposed in him in the partnership.

The statements of a decedent as to what he had already done with his business are admissible in a suit concerning the right of another to carry it on as partner, but not as evidence of an intention to transfer it as by a verbal will.

A witness' knowledge of handwriting cannot be tested by comparing papers in the case with others not in it, as *e. g.* fictitious specimens.

Objections to the admission of testimony cannot be considered if the answers given do not come within them.

Error to Wayne.   Submitted Jan. 14.   Decided April 7.

APPEAL from an order of the Probate Court confirm-

ing the disallowance of a claim against the estate of John W. Pardee. Judgment was given for the estate, and claimant brings error.

Levi Bishop for plaintiff in error.

C. I. Walker for defendant in error. Whatever bears directly on the credibility of a witness is material to the issue, Van Wyck v. McIntosh 14 N. Y. 439; when the character of a party has been attacked, it becomes a material issue, 1 Greenl. Ev. §§ 54, 55; 1 Ph. Ev. C. & H. Notes 529; Doe v. Walker 4 Esp. 50; Ruan v. Perry 3 Cai. 121; See King v. Francis 3 Esp. 116; Ray .v. Donnell 4 McL. 504; papers outside of the case cannot be introduced to test the knowledge of an inexpert witness as to the handwriting, Ph. Ev. C. & H. Notes 610; Griffits v. Ivery 11 Ad. & El. 322; Hughes v. Rogers 8 M. & W. 123; U. S. v. Chamberlain 12 Blatch. 390; Vinton v. Peck 14 Mich. 287.

CAMPBELL, J. Plaintiff in error presented a claim against the estate of John W. Pardee, on behalf of the estate of Joseph Pardee who was father of John, and whose personal estate she claimed John had converted after the father's death. The claim was for the value of the property alleged to have been converted. Joseph Pardee died November 21, 1859, leaving three sons and several daughters, of whom plaintiff is one. There are also some descendants named Conklin, by a former marriage. John Pardee died October 19, 1872. Joseph Pardee also left a widow, who continued to live on the homestead. Plaintiff obtained letters of administration on January 5, 1875. There had been no previous appointment.

The case having been appealed to the Wayne Circuit Court, has been tried four times. It was before us in 1878, when several matters were settled by the decision, which is reported as Howard v. Patrick 38 Mich. 795.

The chief controversy—and substantially the only one

in the court below, except as to some household furniture—was whether John Pardee was in partnership with his father, and therefore entitled to the personal property of the firm as survivor. This came up in different ways, and most of the questions upon the record are more or less connected with it.

Among other things relied on to prove the partnership was an account book claimed to have been chiefly kept by John with his father's concurrence, which had a tendency to show such dealings. Some dispute arose concerning the genuineness and purpose of this book. There was also testimony to show what amount of live stock was possessed and owned at the death of Joseph Pardee.

Two inquiries on this latter point were ruled out. The first was to show how many cattle had been kept before a certain shed was built, which had been put up in Joseph's lifetime, and the second was as to how the cattle had been cared for the winter before and the winter after his death. No objection was made to inquiry confined to the winter of his death. We do not think such evidence was material, or tended to explain any of the facts in issue.

The court below refused to allow plaintiff to testify concerning several distinct inquiries, on the ground that her testimony would relate to matters which were to be excluded as equally within the knowledge of herself and John Pardee. We held on the former argument that she came within the statute so far as any such questions of exclusion existed. The views of the court have been recently given further in *Downey v. Andrus* ante p. 65, and we do not think it necessary to discuss the general doctrine. In order to authorize the exclusion of such testimony it must—being an exception to the general rules of competency—be brought fairly within the statute. It seems to us that enough does not appear as to some of the inquiries to indicate that plaintiff's knowledge was necessarily so obtained as to be privileged, and that the rulings and

objections were too broad. *Jones v. Beeson* 36 Mich. 214. The proper ruling would have been in all ambiguous cases, to restrict the examination to such matters as were not within the exclusion. In some cases the question itself was enough to show this. But in some it was not. The inducements offered by Joseph to John to induce him to remain at home might or might not have been learned from John only; the manner of John's doing work, whether under his father's direction or not, might also appear from circumstances and in various ways, involving no exclusive knowledge or communications; the circumstances attending the account book were testified by some witnesses to have been family talk and open. Looking into the record upon the testimony drawn out on these matters, it does not apper that it was impossible for plaintiff to have knowledge on them derived in such a way as not to be objectionable.

Upon the former hearing we held that evidence of the admissions and statements of plaintiff and her sisters that they were to receive only a certain amount from their father's estate, and of settlements on that basis was outside of the merits of this controversy, and not good foundation for impeachment. It was used on the former trial, not only for impeachment, but as evidence on the merits, and it seems to have been thought by counsel for defendant that the ruling only covered the use of .it on the merits. We held the evidence in contradiction should be rejected altogether as on a collateral issue. The evidence offered in the present case that plaintiff said she had no claim against John Pardee's estate, was certainly foreign to this issue, as she was not.then administratrix, and it is not now important whether she had or had not any claims of her own. The present controversy relates to John's liability to his father's estate, and to nothing else. And whether plaintiff has or has not any private interest left in her father's estate, can have no bearing on the question whether John or his father owned the property in dispute.

Those questions which related directly to the disposal by Joseph to his sons of his property during his life did bear upon the issue, and that testimony was proper for impeachment. That was the very issue to be tried. It may be that some of the other inquiries bear very nearly on the same questions, but impeaching testimony is governed by strict rules as to relevancy, and ought not to be received unless clearly competent.

The objection that there was no sufficient certainty of time and place given as to the admissions intended to be shown, is well taken as to some of the inquiries.

It does not seem to be important that plaintiff should be permitted to show on her own behalf why she did not introduce a certain line of proof on a former hearing. The record does not show any exceptional reason for allowing such testimony, and it is not apparent to us why it should be received.

While there could have been no harm done by allowing the testimony offered that the Conklin heirs were not intimate with the rest, the rejection of it must have been probably because when offered it had no apparent materiality. The subject was covered afterwards fully enough. Neither do we regard the proposed testimony concerning John's lack of means as important. It had no tendency to disprove any actual arrangements, and such had to be made out. And the existence of this controversy without any such defense being put in was evidence enough to render proof that there had been no settlement quite immaterial.

The record does not show what answer Mrs. Evans gave to the question touching the consideration of a certain lease which was referred to in the record, and we cannot, therefore, know that it was any injury to admit it.

There could be no objection to cross-examining the witness Putnam concerning his contribution to the expenses of this suit. It bore upon his interest or bias. Nor do we discover from the record how the testimony, on cross-examination, that Andrew Pardee had an inter-

est after his father's death in carrying on the farm was improper. The facts concerning the handling of personal property were material. The answer not being given, we cannot know that it went too far. The record also fails to show Putnam's answer to a question when he first heard of the ten years' lease. No prejudice can be presumed.

Mrs. Clark gave . some testimony tending to show that the account book chiefly relied on as corroborative **of** partnership relations was fictitious and designed to raise false appearances to prevent the Conklin heirs from setting up claims in the estate. This controversy as to its character figured somewhat prominently in the charge. Objection was made to the ruling of the court allowing her to be asked on cross-examination whether John and his father were not honest and upright men, which she answered affirmatively, and to some independent testimony as to their character.

We cannot say that the inquiry was not proper on cross-examination, as it would have some bearing on the belief of the witness as to whether such purposes, if expressed, were sincere or jocular. But we think there is no sufficient authority for the introduction of such proof of character as independent testimony. It is allowed in criminal cases, but rarely in civil cases, and we think it would be going too far to consider the characters of John and Joseph· Pardee as very directly, if at all, involved in this issue.

The fact that John Pardee's administrator presented a claim against Joseph's estate can throw no light on the relations of the two intestates. If John had lived and presented such a claim in person, it might or might not have shown an inconsistency in his position, according to its nature and circumstances.

It was proper to show the continued possession of the property at the homestead by Joseph's widow. It bore legitimately on the claim that John had converted it. The testimony of John's business capacity, standing alone,

would have no relevancy, but as it was connected with the extent and manner of his management and the trust reposed in him in the partnership, we are inclined to think the admission was not prejudicial or erroneous. It is certainly not as clear as it might be.

We think Joseph Pardee's statements of what he had done with his business were admissible. They related to past and not future transactions, and it does not appear that they were within the Statute of Frauds. No intention of a future transfer to operate as a verbal will could be shown, but the record does not rest on such a showing.

It was not error to refuse permission to test a witness' knowledge of handwriting by showing him real and what were claimed to be fictitious specimens. It does not appear that any of these were papers which belonged in the case. Unless both parties were agreed which were genuine and which false, it would raise side issues which would complicate the case. The rule in this State does not allow comparison with outside papers, and while there is some force in the claim that there should be full means of testing the witness' knowledge, we can see no substantial distinction. *First National Bank of Houghton v. Robert* 41 Mich. 709; *Vinton v. Peck* 14 Mich. 295; *Van Sickle v. People* 29 Mich. 61.

There are several objections to the admission of testimony which cannot be considered because the answers of the witnesses do not appear to have come within the objections.

So far as the charge is concerned, it covered sufficiently the law points presented, and in most respects was in accordance with principles heretofore laid down. If—as we infer from the record—there was a dispute concerning the delivery during the life of Joseph Pardee of certain deeds, the charge could not properly take it away from the jury. The record is not very clear on this point. A lease, the delivery of which is also referred to in the exceptions, is alleged by claimant herself in her claim to have been in force, and no further question

can arise concerning it.    The charge is certainly rather strong on the facts, but as the case is to be retried, we need not consider whether it went beyond the judicial province.

Judgment must be reversed with costs, and a new trial granted.

The other Justices concurred.