COWBOY STATE BANK & TRUST CO. v. ROY.　(No. 723.)

(Court of Civil Appeals of Texas. Amarillo. Feb. 13, 1915.)

1. EVIDENCE ☞197—COMPARISON OF HANDWRITING—GENUINENESS OF STANDARD.

A disputed handwriting may not be compared by the court or jury with other writing used as a standard, unless the genuineness of the standard is admitted or has been established by clear and undoubted proof.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 681, 681½; Dec. Dig. ☞197.]

2. EVIDENCE ☞502 — HANDWRITING—CROSS-EXAMINATION.

One who has testified to the genuineness of a disputed signature from his knowledge of the handwriting of the signer cannot be impeached on cross-examination by asking him to compare signatures on several instruments signed by another, and, after he has stated that they were all signed by the same persons, showing that one of those instruments was a for-

gery, since such cross-examination introduces purely collateral issues into the case.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2306, 2307; Dec. Dig. ☞502.]

Appeal from Fisher County Court; G. M. Shelton, Special Judge.

Action by B. F. Roy against the Cowboy State Bank & Trust Company. Judgment for the plaintiff, and defendant appeals. Reversed and remanded.

John W. Woods, of Rotan, and L. H. McCrea, of Roby, for appellant. Beall & Spencer, of Sweetwater, for appellee.

HENDRICKS, J. The issue in this cause, tried in the county court of Fisher county, was the disputed signature of B. F. Roy, the appellee, on a certain note; the bank affirming, and Roy denying, the genuineness of said signature.

The appellant bank, prior to the institution of the suit by Roy, had applied and appropriated a certain deposit of Roy's, amounting to $657.80, as a payment upon the note, and Roy sued the bank for this deposit. The bank admitted said deposit, also the application and appropriation of same upon the note, but further pleaded the note, and the nonpayment thereof, in justification of said appropriation, to which pleading the appellee and plaintiff Roy interposed a sworn plea of non est factum, denying the execution of the instrument.

The defendant bank, after the introduction of the note in question and an admitted genuine signature of Roy to a certain check, introduced one Foy, who testified that he had been the cashier of said bank for about five years, and knew the signature of Roy "from seeing him sign his name on checks and other papers." He also said:

"Roy has done considerable banking business with me, and I know his signature when I see it. * * * I know B. F. Roy's signature, and the signature [on the note sued upon] is that of B. F. Roy. I know that I am not mistaken."

Thereupon the plaintiff, appellee herein, upon cross-examination, exhibited to the witness Foy four different checks purporting to have been signed by one F. H. Parker, and who, over the objections of the bank, said:

"That in his opinion all of said checks were signed by one and the same party, and if the same had been presented to him for payment, and one acknowledged to be the genuine signature of F. H. Parker, he would have paid all of said checks and charged the amount to Parker's account."

[1] Preliminary to the decision of the real point in the case, it may be pertinent for us to observe that the general rule is that the genuineness of disputed handwriting may not be determined by the court or the jury by comparing it with other purported handwriting of the party, unless such other handwriting, used as a standard for that purpose, is an admitted signature by the contestant, or has been "established by clear and undoubted proof; that is, either by direct evidence of the signature (to such other writing), or by some equivalent evidence." Eborn v. Zimpelman, 47 Tex. 503, 26 Am. Rep. 315. Such other signature may not be proven to be an original and genuine signature merely by the opinion of a witness derivable from the witness' general knowledge of the handwriting of the person whose signature it purports to be. Elborn v. Zimpelman, supra. Also, see Jester v. Steiner, 86 Tex. 420, 421, 25 S. W. 411. The principal reason for the rule, where specimens of handwriting, not admitted to be genuine or unquestionably proven to be such, are not admitted as a standard of comparison with the disputed writing, is that it induces the necessity of calling witnesses to identify such specimens, which, according to the number of specimens, the determination of as many issues could be put to a jury or a court, thereby entering into the domain of collateral matters and prolonging the case, detracting from it real issues, and confusing the adjudication of the same.

In the cause of Kennedy v. Upshaw, 64 Tex. 420, Justice Stayton said:

"The papers examined were already in the case and admitted to be genuine, or were such as the appellant was estopped to deny the genuineness of;" and as "no collateral issue could arise in reference to the genuineness of the papers, with which the instrument in question was compared," such testimony is permissible.

See, also, Hanley v. Gandy, 28 Tex. 211, 91 Am. Dec. 315.

Greenleaf on Evidence, § 581, says:

"Such papers can be offered in evidence to the jury only when no collateral issue can be raised concerning them."

Justice Gaines said in the case of Smyth v. Caswell, 67 Tex. 573, 4 S. W. 851, that the grounds for the exclusion of extraneous handwriting for comparison with a disputed handwriting, where the former is not admitted or proved to be genuine, are:

"First, that such a practice is calculated to raise collateral issues as to the genuineness of the signatures offered; and, second, that it affords an opportunity to the party offering them to obtain an advantage by an unfair selection."

Of course we are simply reproducing fundamental rules and the reasons thereof to a different status of testimony; however, the application of same against the admissibility of this character of testimony, we think, is clear. Hence what is the rule when the opinion of the witness is attempted to be impeached as to writing of third parties?

It is necessarily true that:

"All evidence of handwriting, except where the witness saw the document written, is, in its nature, comparison. It is the belief which a witness entertains, upon comparing the writing in question with its exemplar in his mind, derived from some previous knowledge." 1 Greenleaf on Evidence, § 576.

In this case, after Foy had testified with reference to the four checks, purported to have been signed by Parker, the latter was placed upon the stand and testified that three of the checks were genuine. One of them, however, was a forgery, and had been presented to the defendant bank and had been paid. The appellee, without reproducing the particular text of Jones on Evidence, cites section 556, in which we find the following enunciation, and which we presume is relied upon:

"On the cross-examination of experts, on the subject of handwriting, very considerable latitude should be allowed. Thus, any writings or parts of writings may be exhibited to them for their opinion as to the identity of the writing with that in question. * * * In some cases spurious writings or writings prepared for the purpose have been allowed to be used in cross-examination"

—citing the cases in confirmation of the latter doctrine: Hoag v. Wright, 174 N. Y. 36, 66 N. E. 579, 63 L. R. A. 163; First National Bank v. Allen, 100 Ala. 476, 14 South. 335, 27 L. R. A. 426, 46 Am. St. Rep. 80; Johnston Harvester Co. v. Miller, 72 Mich. 265, 40 N. W. 429, 16 Am. St. Rep. 536; Browning v. Gosnell, 91 Iowa, 448, 59 N. W. 340. An examination of the cases in support of the doctrine exhibits the presentation of aliunde signatures and writings to experts, who had qualified on direct examination in that capacity, and testifying solely by comparison, except in the Alabama case, where the plaintiff was upon the stand, contending that certain checks paid by the bank were forgeries, and several checks, some genuine and some forgeries, were presented to him for examination to distinguish the true from the false; and the Supreme Court of Alabama said:

"The rule which prohibits a nonexpert from giving an opinion based upon a comparison of handwriting has no application, where the party whose name is signed is himself being examined as to whether the signature in question is his signature or not."

In the cases cited, with the exception of the Alabama case, the witnesses were experts in the sense of testifying as to a comparison of handwriting and not on account of acquaintance with the signature of the party whose handwriting is in dispute, having seen the party write, or from familiarity with numerous genuine signatures and writings of said party. This rule, even with reference to cross-examination by the presentation of the character of aliunde writings indicated, has been denied in the following cases: Gaunt v. Harkness, 53 Kan. 405, 36 Pac. 739, 42 Am. St. Rep. 297; Howard v. Patrick, 43 Mich. 121, 5 N. W. 84; Rose v. Bank, 91 Mo. 399, 3 S. W. 876, 60 Am. Rep. 258; Andrews v. Hayden's Adm'rs, 88 Ky. 455, 11 S. W. 428; Massey v. Farmers' Nat. Bank, 104 Ill. 327; Tyler v. Todd, 36 Conn. 218. Of course, we are not concerned here with the true rule in such cases, and are merely citing them as to the unsettled condition of the law, outside this state. We are merely concerned here with the true rule, where aliunde writings, or signatures of a third party, are presented to a witness, not strictly an expert, who is testifying to the genuineness from his personal knowledge of handwriting. After a diligent search, we are unable to find this particular case presented.

[2] Where a witness is testifying as an expert, as to comparison of handwriting, and not delivering an opinion on account of acquaintance with handwriting, such testimony is admissible, "in order to bring out the essential traits and characteristics of a person's handwriting, which might not otherwise be noticed by the untrained eye of the ordinary judge or juror." Jones on Evidence, vol. 3 (Blue Book) § 556, p. 646. The author further says:

"By constant practice in examining signatures and handwritings it is but natural that an expert will readily discover many peculiarities—many defective features—of the handwritings, by the aid of tests they have often made and applied, that would not, at first blush, be discernible to persons unaccustomed to such methods of investigation." Same author, page and section, supra.

The real underlying reason for the admissibility of the testimony of an expert in comparing genuine signatures with disputed signatures is on account of superior knowledge of peculiarities of handwriting, to the knowledge of ordinary individuals.

Justice Cooley said, in the case of Insurance Co. v. Throop, 22 Mich. 161, 7 Am. Rep. 638:

"Where an expert is undertaking to testify concerning handwriting, it is difficult to set any bounds to an examination which may reasonably tend to test the accuracy of his knowledge, skill, and judgment. Obviously it would be proper to subject him to tests which would be entirely improper and tend unjustly to embarrass and confuse one who did not assume to be an expert, but who might, nevertheless, have some personal knowledge of a particular specimen of handwriting submitted to his inspection."

The witness Foy, whose testimony is in this cause, of course did not qualify as an expert in that sense ordinarily used in the opinions. He was testifying to the signature of the plaintiff Roy, on account of personal experience with his previous handwriting, and by comparing the one in dispute with the "exemplar," or picture, in his mind, produced by such experience. In that sense only, on account of the jury being entitled to his opinion, may such a witness be considered as an expert; and it is in that sense we necessarily presume that Justice Bonner permitted the testimony of the witness Brown, on cross-examination, in the cause of Brown v. Chenoweth, 51 Tex. 478, wherein certain testimony delivered by said witness with reference to admitted and genuine signatures of himself and E. A. Brown, his brother, is disclosed. In reality, the objections in that cause were leveled at the presentation of his own signature and that of his brother, in other writings used to test the ability of the wit-

ness, a litigant in the cause, in comparison with the disputed signatures in issue, though something was said as to Brown's testimony as to the signature of one Able, also a party to the cause. We think, upon proper analysis, as to the real presentation of the test in the Brown-Chenoweth Case, and the presentation in this case of extraneous signatures and writings irrelevant to the cause, of a third party, presented to the witness Foy, for the purpose of weakening the testimony as to the signature of the plaintiff Roy, there is a marked distinction between the cases on the facts, and we believe there should be a resultant distinction as to the application of the legal principle as to the competency of the witness and the determination of the admissibility of his testimony.

The witness Foy evidently had not the signature of Parker, the third party, in his mind as an "exemplar." This record does not show that he was acquainted with the man's signature. He was not offered, nor was he testifying, as an expert in the enlarged sense of the term. It was entirely a collateral issue in the case, and if another witness had been produced for the purpose of showing that Parker in reality had signed all four of the checks, and not three, and hence that Parker's testimony as to the forgery of one of them was untrue, such a collateral issue could have been indefinitely combatted by witnesses for and against the genuineness of such collateral writings, only to be prevented within the discretion of the trial court. Again, other writings of other parties, Jones, Smith, and Brown, with the same character of controversy presented to a court or jury, could present a state of litigation upon collateral matters to such an extent as that the main issue could be forgotten in view of the ancillary ones injected into the cause. It may be that in this particular cause the signature of Parker to one of the checks was a forgery; or it may be that the defendant was unprepared to meet an unsuggested collateral issue of the genuineness of the signatures of third persons, by testimony for the purpose of proving the contrary. That we are not concerned with, as we believe from the analogies of the law, with reference to matters of this character, that the witness Foy, over the objections of the defendant, was not that character of witness, and the testimony delivered by him was not of that nature, which could be justified. We think the testimony should have been excluded. The objection was not as broad as it might have been, but we think the competency of the witness is involved, which was correctly presented by the objector, though the discussion here takes the range of the competency of the testimony.

The first assignment of error, predicated upon the action of the court in permitting the testimony of Foy as to a $5,000 note, in favor of the Western Loan & Guarantee Company, "signed by the witness (Foy), Arlon B. Davis, and others," does not disclose error. As presented in the bill of exceptions, it is wholly harmless. Roy's connection with it, according to the bill, is unsuggested. The statement of facts, however, presents a suggested connection of Roy with the note, upon which, unless connection is shown between the $5,000 note and the $4,062 note in controversy, upon a proper bill, error would be predicable.

Reversed and remanded for the error indicated.