ASKINS, Inc., v. SPARKS.

No. 2321.

Court of Civil Appeals of Texas. Beaumont.
Jan. 19, 1933.

Rehearing Denied Jan. 25, 1933.

Alfred DuPerier, of Beaumont, for plaintiff in error.

Kitching & Kenna, of Beaumont, for defendant in error.

WALKER, C. J.

This appeal is by writ of error, but the parties will be referred to as appellant and appellee.

Appellee, H. B. Sparks, was employed by the A. A. Thompson Furniture Company of Beaumont, on the 3d day of August, 1930, and continued regularly in this employment until the night of October 24, 1931, when he was discharged. He began work at $150 per month, was raised to $200 per month, reduced to $175 per month, and on the day of his discharge was receiving $42.50 per week. The Thompson Furniture Company had a rule for its employees to the effect that they would be discharged if they gave assignments of their wages to their creditors. On the 24th day of October, 1931, appellant, Askins, Inc., through one of its servants, presented to appellee's employer a written assignment bearing the signature of appellee, whereby he purported to assign to appellant his wages "up to the amount of $27.75." When this assignment was presented to appellee's employer, appellant represented that it had been duly executed by appellee and that his signature thereto was genuine. On this evidence that appellee had broken the rule of his employment, he was immediately discharged, though he denied, both to his employer and to appellant's agent, that he had executed the written assignment. This suit was filed on the 6th of January, 1932, by appellee against appellant for actual and exemplary damages, for wrongfully causing his discharge. For cause of action appellee alleged that he was not indebted to appellant and had not executed the assignment exhibited by it to his employer, and that its claim to hold the assignment "was false and untrue and such claim was made falsely, wickedly, maliciously and unlawfully, and for the purpose of injuring, harassing and annoying this plaintiff and with the intent and purpose of causing plaintiff's employer to wilfully discharge the plaintiff from his employment." Appellant's answer controverted the material allegations of appellee's petition. Answering special issues, the jury found: (a) That appellee did not sign the wage assignment exhibited by appellant to appellee's employer; (b) that appellant was actuated with malice in notifying appellee's employer that it held appellee's wage assignment; (c) that appellee was discharged by his employer "as a direct result" of the action of the defendant in notifying the plaintiff's employer that it held such assignment; and (d) that appellee suffered $500 actual damages "as a direct result" of this act of appellant, and that appellant should pay appellee an additional sum of $500 as exemplary damages. Judgment was accordingly entered in appellee's favor, from which this appeal was duly prosecuted.

Opinion.

The court did not err in overruling appellant's special exceptions to the allegations of appellee's petition on the issue that, before appellant gave appellee's employer notice of the wage assignment, it had notice of the rule promulgated by the employer forbidding its employees to assign their wages; nor did the court err in refusing to instruct a verdict in appellant's favor on the ground that the evidence did not raise the issue presented by the special demurrer; nor did the court err in refusing to submit this issue to the jury. The jury found that the wage assignment in issue was not executed by appellee. Therefore, as this instrument was a forgery, and as appellant, as found by the jury, acted with malice towards appellee in exhibiting it to appellee's employer, the want of knowledge of the rule in question was immaterial. On the findings of the jury appellant was liable to appellee for all damages proximately resulting to him from the malicious conduct of appellant in exhibiting the forged assignment.

The court did not err in refusing to instruct a verdict in appellant's favor, on the ground that he failed to show diligence in seeking employment after his discharge. Appellant did not except to the charge on the ground that the court failed to submit this issue, but his point is simply that the court erred in refusing to instruct a verdict in its behalf on the whole case, on the ground that appellee failed to establish "diligence," as a matter of law. A sufficient answer to this proposition is to say that appellee's evidence clearly raised this issue and, where an issue is raised by the evidence, the court cannot instruct a verdict against it. Besides, this issue would go only to the mitigation of damages, and not operate as a complete defense.

Appellant is in error in saying that the evidence clearly established the issue that the execution of the wage assignment by appellee, and not the fact that appellant gave the employer notice of the assignment, was the direct and proximate cause of appellee's discharge. There can be no merit in this contention because the jury found, and the evidence abundantly supports the finding, that appellee did not execute the wage assignment in issue.

Appellant's proposition that the giving of the notice of the wage assignment did not render it liable for damages, because at the time the notice was given appellee was indebted to it in the amount covered by the assignment, presents an abstract question of law. Under the verdict of the jury appellant had no assignment from appellee, but wrongfully gave notice to the employer of a forged assignment. The jury convicted appellant, not of wrongfully giving notice of a duly executed assignment, but of willfully giving notice of a forged assignment. The propositions of law invoked by appellant, which it takes from Cotton v. Cooper (Tex. Com. App.) 209 S. W. 135, have no application to the facts of this case, as found by the jury.

 Appellant complains that the court erred: (a) In receiving in evidence "as standards of comparison with the signature to the wage assignment in issue, certain carbon copies with incomplete signatures of defendant in error affixed thereto"; and (b) that the court erred in permitting appellee's employer, A. A. Thompson, to testify that, in his judgment, the signature to the wage assignment in issue was not the genuine signature of appellee, the ground of this objection being that Mr. Thompson was not shown to be an expert. The receipt books complained of under point (a) were the original carbon copies of appellee's genuine signatures. On this issue appellee testified:

"Q. Do you have any specimen of your handwriting here that was made prior to this date of October 23? A. I do.

"Q. Let's see, do you have them handy? A. Yes sir, those receipt books that I wrote up to that alleged signature.

"Q. Are these your signatures in here? A. Yes sir.

"Q. Made in your own handwriting? A. Yes sir.

"Q. And these signatures were made prior to the date that you were discharged by the Thompson Fur. Co.? A. Yes sir."

The objections urged against this testimony were to the effect that it was self-serving, the carbon copies were not shown to be appellee's genuine signature, it was incompetent, irrelevant, and immaterial and not the identical signature in issue, and the carbon copies were of the initials of appellee and not his full signature. These objections were properly overruled. The rule now seems to be that signatures on papers not connected with the case may be received for the purpose of comparison with the signature in issue when the proffered signatures are shown to be genuine. No issue was raised against the genuineness of the signatures offered in evidence as a basis of comparison. Appellee testified that they were his genuine signatures, and his testimony on this issue was corroborated, if corroboration was necessary, relieving the question of all doubt. 10 R. C. L., Evidence, pars. 182, 183; Latham v. Jordon (Tex. Com. App.) 17 S.W.(2d) 805; Cowboy State Bank & Trust Co. v. Roy (Tex. Civ. App.) 174 S. W. 647; Kveton v. Keding (Tex. Civ. App.) 286 S. W. 673; Kennedy v. Upshaw, 64 Tex. 411; Commercial Standard Ins. Co. v. McGee (Tex. Civ. App.) 40 S.W.(2d) 1105. That the purported signatures were carbon copies of appellee's signature did not render them inadmissible. On this issue it was held in Wade v. G., H. & S. A. Railway Co. (Tex. Civ. App.) 110 S. W. 84, 85, quoting the seventh syllabus: "A carbon copy of a writing, made by the pressure of a pencil on the original, and the original, are each the writings of the party, and the carbon copy is not a copy of the original writing; and hence the carbon copy is admissible for the purpose of comparison of handwriting." That the carbon copies were signatures of appellee's initials, and not of his full name, did not render them inadmissible. The testimony of the witness Thompson, complained of under point (b), supra, was properly received. He testified that he was acquainted with appellee's signature. Appellee had been Mr. Thompson's collector for nearly two years, and the extraneous signatures offered in evidence, as shown above, were the signatures to Mr. Thompson's receipts. He testified further, with reference to appellee's signature, that he knew "what it looks like," and further:

"Q. All right; can you state whether or not the signature attached to this instrument (referring to assignment of wages) was the genuine signature of H. B. Sparks? A. I don't think it was, no sir.

"Q. What's that? A. I don't think it was; it didn't look like his signature."

When one is acquainted with the handwriting of another, he may testify to such writing, whether he is an expert or not. Williams v. Deen, 5 Tex. Civ. App. 575, 24 S. W. 536. The rule is stated, as follows by 17 Texas Jurisprudence, 694: "A witness who knows a person's handwriting may testify that an instrument or signature is in the handwriting of such person, though he has never seen him write, and has never corresponded with him." In discussing the rules governing the testimony of nonexpert witnesses, 6 Ency. Ev. 371, on authority of Stone v. Moore (Tex. Civ. App.) 48 S. W. 1097, an-

nounces the following rule: "In showing familiarity with handwriting, the witness is not restricted to the single means of having seen the person write. It is sufficient that the witness may have acquired knowledge of the handwriting by having seen writings admitted by the purported author to be his, or with his knowledge acted upon as his, or so adopted in the ordinary business of life as to create a reasonable presumption of genuineness."

For the reasons stated the judgment of the court below is in all things affirmed.

Affirmed.