## CHARLES T. HITCHCOCK v. STEWART MOORE.

*Libel and slander—Evidence as to character—Animus—Husband*
*and wife—Communications during marriage—Effect of sub-*
*sequent divorce—Practice in circuit courts—Argument*
*of counsel—Mitigation of damages.*

1. It is *not* competent for a plaintiff in a slander suit to introduce evidence of his good character as a part of his main case, even though upon his cross-examination he has been inquired of concerning specific facts which, if true, would tend to weaken it, and lessen his good reputation.

2. Where, in a slander suit, the plaintiff testified to a bitter feeling on the part of the defendant towards him growing out of divorce proceedings between plaintiff and his wife (defendant's daughter), he may be cross-examined on that subject, and as to his alleged threats that he would get back a portion of the money he had been decreed to pay, counsel for defendant claiming that the slander suit was brought for that purpose, and such cross-examination being competent to show the *animus*, motive, and bias of the witness.

3. A plaintiff cannot be cross-examined as to communications made by him to his divorced wife during marriage, nor can she testify thereto. *Maynard v. Vinton*, 59 Mich. 151, 152.

4. Where a witness for a defendant in a slander suit was questioned with regard to a conversation with the plaintiff, in which he requested the witness to get the defendant drunk, etc., with the evident intent of proving that the *time* of getting him drunk related to the then trial, and before the witness answered as to such time counsel for plaintiff requested permission to ask if the conversation referred to the suit on trial, which was refused, and the witness allowed to answer, but failed to connect the conversation with said suit, such refusal was error, which was intensified by permitting defendant's counsel to comment upon such testimony to the jury.

5. In a suit for slander in charging the plaintiff with burning the defendant's barn, it is competent to show, in mitigation of damages, the threats of the plaintiff to burn it, if communicated to the defendant before speaking the alleged slanderous words, as tending to show that defendant had good reason to believe the truth of his accusation.

Error to Oakland. (Moore, J.) Argued April 19, 1888. Decided April 27, 1888.

Case for slander. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*Cass E. Herrington* and *Theo. Hollister*, for appellant.

*Taft & Smith*, for defendant.

[The points of counsel and authorities cited are stated in the opinion.—REPORTER.]

MORSE, J. This is an action for slander arising in White Lake, Oakland county, and tried in the circuit court for that county. Verdict and judgment went for the defendant.

It was charged in the declaration that the defendant had wrongfully accused, in various words and ways, the plaintiff of burning defendant's barn in August, 1886.

The plea was the general issue.

We shall consider the errors assigned in the order in which they were argued before us

*First.* Upon the cross-examination of the plaintiff he was asked questions concerning his treatment of his wife, who was a daughter of the defendant, and if he did not at one time, while they were living together, take her down and put his foot upon her, and otherwise use her cruelly.

The plaintiff called as his next witness one Jackson Voorheis, and his counsel proposed to show by such witness what the general reputation of the plaintiff was, where he resided, as to being an upright, law-abiding citizen. This was excluded.

It is contended that the plaintiff has a right in this action to show his general good character and reputation, as a part of his main case, as such character and reputation are necessarily involved in the issue, independently of the fact whether

70 MICH. 8.

such character is attacked by defendant or not, and especially in this case, where, upon the cross-examination, the character of the plaintiff had been indirectly if not directly questioned. The following authorities are cited to sustain this contention: *Williams v. Haig*, 3 Rich. Law, 362; *Bennett v. Hyde*, 6 Conn. 24; *Adams v. Lawson*, 17 Grat. 258; *Shroyer v. Miller*, 3 W. Va. 158; *Sample v. Wynn*, Busb. 319; *Romayne v. Duane*, 3 Wash. C. C. 246; *Williams v. Greenwade*, 3 Dana, 432; *King v. Waring*, 5 Esp. 13; *Rogers v. Clifton*, 3 Bos. & P. 583; *Burton v. March*, 6 Jones (N. C.), 409; Wood's notes to Starkie, Sland. & Lib. 717.

We think the better doctrine and the weight of authority support the ruling made by the court below. The law presumes the character of the plaintiff to be good until it is attacked, and he can safely rest upon that presumption. As long as it is not assailed, there is no comparative degree of good, better, best in his character. It stands as the best. If he himself open the inquiry, then the comparison legitimately commences; and upon his own showing, and without any attack by the defendant, his character may be qualified and reduced below the standard of the presumption, upon which he may confidently rely until it is questioned by the opposite party. Without introducing any evidence his reputation and character stand without qualification or defect, and no evidence that he may offer can add to or increase its force and virtue. The almost universal rule has been as held by the circuit judge. See the following authorities: *Cornwall v. Richardson*, Ryan & M. 305; *Matthews v. Huntley*, 9 N. H. 146; *Stow v. Converse*, 3 Conn. 325; *Bamfield v. Massey*, 1 Camp. 460; *Dodd v. Norris*, 3 Id. 519; *Houghtaling v. Kelderhouse*, 2 Barb. 149, 1 N. Y. 530; *Gough v. St. John*, 16 Wend. 646; *Anderson v. Long*, 10 Serg. & R. 55; 1 Whart. Ev. (2d ed.) §§ 47, 50; *Miles v. Vanhorn*, 17 Ind. 245; *M'Cabe v. Platter*, 6 Blackf. 405; *Howard v. Patrick*, 43 Mich. 121 (5 N. W. Rep. 84). See, also, *Fahey v. Crotty*,

63 Id. 383 (29 N. W. Rep. 876), and cases there cited.

Nor can the fact that inquiries are made, upon cross-examination, in relation to specific facts that may tend to weaken his good character and lessen his good reputation, change this rule. Such specific facts cannot be met, either as a part of the main case, or upon rebuttal, with evidence of general reputation in the community where he lives. If, upon such cross-examination, he admits the existence of such specific facts, they must stand against him for what they are worth, except as they may be explained and qualified by evidence or explanation in his behalf. If they are denied by him, and the defendant introduces testimony tending to establish them, he has the right in rebuttal to deny them, and establish their falsity or non-existence.

*Second.* The cross-examination of the plaintiff with the view of showing that there had been divorce proceedings between the plaintiff and his wife; that under the decree in the case he had been compelled to pay $500 for the support of his child; and that he had made threats that he was going to get a portion of the money back,—was coupled with a remark by defendant's counsel, " and in my judgment that is all this suit is for so far as that is concerned," and the further statement, " that is our theory of the case, may it please the court."

This testimony was competent to show the *animus,* motive, and bias of the witness. He had also testified on his direct examination in regard to the divorce proceedings, and that on account of the differences between himself and his wife the feeling of the defendant was very bitter towards him. It was therefore proper to cross-examine him on this subject.

*Third.* The plaintiff, upon cross-examination, was interrogated in relation to communications claimed to have been made by him to his wife before the severance of the marital relation, and Adelaide V. Hitchcock, his divorced wife, was

permitted, against objection, to testify as to what the plaintiff said to her while he was her husband.

This was plainly error, and against the express prohibition of the statute. Laws of 1885, p. 288; *Maynard v. Vinton,* 59 Mich. 151, 152 (26 N. W. Rep. 401). Death does not release the seal of secrecy enjoined by the statute, and, if death cannot remove the disability, a divorce will not do so.

*Fourth.* One William Wickens, a witness for defendant, was questioned in regard to a conversation with plaintiff, in which the plaintiff requested Wickens to get the defendant drunk, at plaintiff's expense. The questions were asked with the evident intent of proving that the time of getting him drunk related to the trial of the case under consideration.

The counsel for the plaintiff, before the witness had stated the time of the conversation, or what it was, requested the court to permit him to ask the witness if the conversation pertained to the suit then on trial. This request the court refused. The witness then stated, under objection from plaintiff's counsel, that plaintiff said to him that he wished to recover possession of his child; and also said,—

" ' You see Mr. Moore up here occasionally do you not?' I said I did. He wanted to know if I would not get Mr. Moore drunk, and he would stand the expense."

After an ineffectual attempt to connect this testimony with the suit at bar, the attorneys for defendant consented that the testimony of the witness might be stricken out of the case, and it was struck out.

If plaintiff's counsel had been permitted to ask the question desired by him, the testimony of the witness would not have gone before the jury to the prejudice of the plaintiff.

But the error did not stop here. When the counsel for the defendant were presenting the case to the jury, after the evidence was all submitted, Mr. Smith, in his argument, said:

"To go and get the old man drunk, *in this case,* because he occasionally takes a glass of beer; to get him under the influence of liquor; and when he was under that influence— Oh, the double-damned damnation of the man, when he wouldn't take him at his best; wouldn't rely upon his age; but he must make him intoxicated before he dare get statements."

*Mr. Herrington, of counsel for plaintiff, interrupting.* "I except to those remarks, because there is no evidence that the plaintiff expected to get the defendant intoxicated."

*Mr. Smith, proceeding.* "What does he do? He says, 'Get him drunk. Take advantage of him.' That is the man that comes in here and asks for damages at your hands."

*Mr. Herrington.* "I except to the remark that he said, 'Get him drunk.'"

*Mr. Smith.* "Is he entitled to the slightest consideration at your hands? Not any. It does not stop there. There are other things in the case which bear upon his character; and what is it? In the month of June, 1886, at a time when they were getting in hay, what occurred then that shows that that man has got no character or no standing? What did he do? Riding by in a buggy, after meeting the old man upon the road, and seeing John Gulick, his hired man, down in the field getting up the hay, he says, 'See the sons of bitches toiling, getting in their hay. It will do them no good. They will never feed it out.' Oh, what does that mean? It means that which was consummated in less than sixty days, that it did go up in the smoke and the flame, together with that barn that went up on the evening in August."

*Mr. Herrington.* "I except to that as incompetent, because they cannot prove that he set the barn on fire."

*Mr. Smith.* "If he was treated justly to-day he would be arrested for suborning witnesses, which is a state prison offense."

*Mr. Herrington.* "I except to those remarks."

It does not appear from the record that the court had anything to say while these proceedings were going on. There was no evidence in the case to warrant the language of Mr. Smith in relation to the attempt of the plaintiff to get defendant drunk, and he should have been promptly stopped when the attention of the court was called to it by the exception of plaintiff's counsel.

Neither was it proper for Mr. Smith to charge, as he did, that plaintiff burned the barn. There was nothing in the pleadings that justified the raising of any such issue. It was competent to show that the plaintiff had threatened to burn the barn, if such threats were made known to the defendant before the speaking of the alleged slanderous words, in miti-gation of damages, as tending to show that defendant had good reason to believe that he was speaking the truth. Such threats were admissible for no other purpose, save to show bias of plaintiff, under the pleadings.

Besides, it was shown by the witness (Mr. Hyde) who testified to these remarks of plaintiff about the hay, that the conversation had never been communicated to the defendant. The testimony was introduced ostensibly to show malice upon the part of plaintiff toward defendant. The evidence of the witness Hutchins was confined to remarks made by the plaintiff about the divorce suit, and that he said Mr. Moore and his family were trying to ruin him, and if he ever got a chance,—

' Got a clue to make him pay back the money, he would try his turns. He said if he ever got the chance he should like to see Moore in Jackson, because he thought he had mis-used him altogether."

This talk was not communicated to defendant before the alleged utterance of the slanderous words.

*Fifth.* A motion was made to strike out the evidence of both the witnesses Hyde and Hutchins as incompetent and immaterial. The motion was denied. The testimony of the witnesses was properly retained as bearing upon the motive and bias of the plaintiff, and thereby affecting his credibility as a witness. But it should not have been used for any other purpose, and the jury should have been so instructed; but they were not. Nor should counsel have been permitted to use this evidence to establish a burning of the barn by the plaintiff, or in mitigation of damages. There was no evi-

dence that defendant knew anything of these threats at the time he was charged with speaking the slanderous words.

Adelaide V. Hitchcock could not legally testify that she told her father what her husband said to her while she was his wife, and state what she told her father, as that would be a violation of the statute. It would permit her indirectly to do what the statute forbids her to do directly, as she would thus place before the jury the statements of her husband to her. It may be that the defendant might state in his own defense, in mitigation of damages, what his daughter stated to him, if the statement was made before the alleged slander; but he testified to nothing of the kind on the trial.

There was no proof in the case, according to the record, which purports to set out substantially all the testimony in the case, that any threat of the plaintiff against the defendant was communicated to him before the alleged slander, excepting the statement made in his presence to her mother by Adelaide V. Hitchcock, which was not admissible, and which it is not certain from her testimony that he heard. Therefore the court should have given the following instruction asked by the plaintiff's counsel:

" There is no evidence in this case. which can be received in mitigation of damages."

*Sixth.* We do not think the court erred in his instruction to the jury in relation to the receipt. That was a question for the jury to determine, and the court very properly said that they must find how far the plaintiff was connected with it, and how far that connection, if he was connected at all, affected his credit as a witness.

For the errors herein noted, the judgment below is reversed, and the plaintiff granted a new trial, with costs of. this Court.

SHERWOOD, C. J., CHAMPLIN and LONG, JJ., concurred. CAMPBELL, J., did not sit.