CYROWSKI *v.* POLISH-AMERICAN PUBLISHING CO.

1. LIBEL AND SLANDER—DAMAGES—MENTAL SUFFERING.
   Mental anguish and suffering is a proper element of damages in an action for libel.

2. SAME—DAMAGES—PHYSICAL ILLNESS.
   Physical illness or ailment is not a proper element of damages in an action for libel.

3. SAME—EVIDENCE—ADMISSIBILITY—EXPERT WITNESSES — DAMAGES.
   Evidence of a physician that sleeplessness, headaches, and loss of weight would be natural results of mental anguish suffered by plaintiff was admissible to show the severity of mental anguish suffered as the result of the libel.[1]

4. SAME—EVIDENCE—HEARSAY—ADMISSIBILITY.
   The rule against hearsay was not violated by the admission of testimony of statements made by third persons not produced as witnesses relating to remarks made by them, their conduct and opinions as exhibited and expressed by them concerning the plaintiff after some time had elapsed from the publication of the libelous matter complained of.

5. SAME—MALICE—BONA FIDES—EVIDENCE—ADMISSIBILITY.
   The testimony of third persons who advised the editor of the defendant publishing company to question the plaintiff about the truth or falsity of the libelous article before publication, was properly admitted as bearing upon the good faith of the defendants and as showing malice.

6. SAME—JUSTIFICATION—EVIDENCE—ADMISSIBILITY.
   Where a plea of justification was filed, evidence of plaintiff's good reputation previous to the publication complained of was admissible, such plea in effect putting upon the record a repetition of the defamatory charge complained of and including a deliberate averment of its truth.

7. SAME—CHARACTER OF PLAINTIFF—PRESUMPTIONS.
   In an action for libel the law presumes that the character

---

[1] On admissibility of opinion of witness as to damaging effect of libel or slander, see note in 35 L. R. A. (N. S.) 1119.

of a plaintiff is good until attacked, and he can safely rest upon such presumption.

8. SAME—EVIDENCE—DAMAGES.

Testimony concerning the early training and life of the plaintiff was admissible, as an aid to the jury in determining what the injury from the libelous declaration was.

9. SAME—JUSTIFICATION—QUESTION FOR JURY—DAMAGES.

Where the matter charged was libelous *per se* and a plea of justification was filed which was not sustained by proof, there was no error in submitting the case to the jury on the sole question of damages, such being the real question for consideration by the jury.

10. SAME—CORPORATIONS—LIABILITY OF MANAGER—EVIDENCE.

In an action for libel against a publishing corporation and one who was general manager, a stockholder and director of the corporation, and allowed the libelous article to be published after reading it and made no effort to see that a retraction was published after it was demanded by plaintiff, evidence *held*, sufficient to show that the manager's connection with the corporation was such that the court was justified in submitting his liability to the jury.

11. SAME—DAMAGES—EXCESSIVE AWARD.

A verdict for $10,000 damages for loss of business by plaintiff as an attorney and $5,000 damages for injured feelings, as modified by reducing the amount allowed for loss of business to $5,000, was not excessive.

Error to Wayne; Hosmer, J. Submitted October 18, 1916. (Docket No. 2.) Decided June 1, 1917.

Case by August Cyrowski against the Polish-American Publishing Company and others for libel. Judgment for plaintiff. Defendants bring error. Affirmed.

*Clarence P. Milligan*, for appellants.

*Monaghan & Monaghan (Frank Murphy*, of counsel), for appellee.

The plaintiff, an attorney at law, brought suit against the defendants, publishers of a newspaper

called the Polish Daily in the city of Detroit, printed entirely in the Polish language, and with a circulation of about 7,000 among the Polish people of Detroit, Chicago, Bay City, Philadelphia, and other cities, for libel on account of the printing of certain articles in the Polish language in said paper on November 20, 22, 23, 1912. Prior to the alleged libel plaintiff was a candidate for the office of State senator. The publications relied upon to sustain this action are as follows, translated:

"Polish-German-Catholic-Lutheran. Candidate.

"It is difficult to limit ourselves to only one 'Glimpse' and it is more difficult yet to pass in silence the political debasement which Attorney Cyrowski committed being a candidate for the office of senator in the Second district.

"A man holding himself out as a Pole and a Catholic, who owes his position to the Poles and Catholics, assumes the garb of a German and Lutheran, so that thereby he might gain for himself several voters of other nationalities. Mr. Cyrowski can have no defense in his behalf because the election circular cited by us in the Glimpses was mailed and sent to all other nationalities and therefore known to him.

"There are frequent instances among the Poles of denials of their nationality, but they have this in common, that a Pole who forever denies his nationality and his religion gives himself wholly into the hands of Germans, Lutherans. Such examples, however, as Mr. Cyrowski who changes his nationality, religion and opinion and his own soul to suit the direction of the wind we find very few in our post dismemberment of Poland history. Politics depraves people and often dictates acts not in harmony with the nationality, but in every instance has a reasonable and logical foundation for the treatment of the matter.

"Mr. Cyrowski, announcing himself a German and a Lutheran, didn't do so rationally nor logically, because he knew that such political maneuver would be detected sooner or later and would be given to the public.

"From this time on there is no place for Mr. Cyrowski amongst the Polish people nor amongst the Catholics, because he who once has renounced his fatherland and his religion for material gains is a traitor and will forever remain one.

"Mr. Cyrowski has gained a record in the political races for offices, but gained it in such a manner and by such means as the greatest of Targowiczanin would be ashamed to employ. He has trodden on everything that can be most sacred. He renounced the virtues which he sucked out from the breast of his mother, and all this to satisfy his ambition. It is painful to write upon such a subject and painful to call a man to public account for such national treason and religious treason, but similar instances cannot be regarded as a personal matter not fit to be published, because they are symptoms of public character.

"We know that many Polish politicians in America are renouncing their nationality, are catering to the greatest enemies of the Polish name, but are doing that privately, quietly, and secretly, and are not perpetuating their perverseness black on white. If we had but one fact in defense of Mr. Cyrowski, we would pass this by in silence, not wishing to punish a man too severely for such act, but not in a Polish-German-Catholic and Lutheran matter of a Polish-German-Catholic and Lutheran candidate for senator, we have no such fact. The Poles do not need such candidates for offices, because, supporting such, they would be false to themselves.

"Who denies his own nationality, spits upon the religion of his forefathers, is not worthy of support nor of pity; he puts all his friends in a difficult position and exposes them to the contumely among others.

"If Mr. Cyrowski had declared himself an American, he would thereby deny his nationality, but when he had declared himself a German and a Lutheran, he thereby committed a crime of treason against his nation, joining our worst enemies, and his act is so much the worse, for no one in the United States would demand of a Pole that he become a German or a Lutheran.

"A Hakatist could only do that, and whoever joined such and seeks his support becomes one himself."

This article appeared in the issue of the Polish Daily of November 20, 1912. The following appeared on November 22d in answer to a letter demanding a retraction written by him to the defendant publishing company:

"An Answer to Mr. Cyrowski.

"To the request of Mr. Cyrowski to rectify our editorial published Wednesday referring to a certain coup employed during the last political campaign, we will reply with a question to which Mr. Cyrowski as an intelligent and educated man will doubtless find an impartial answer.

"What would you do, Mr. Cyrowski, in a case like this: Suppose you are a man who loves sincerely his native land and the faith of his forefathers, and you know that a German is the greatest enemy of your faith. Suddenly you receive evidence black on white, that a compatriot of yours in whose loyalty to the fatherland and faith of his forefathers you believed implicitly—that that compatriot declares publicly before others that he is a German and a Lutheran and as such is running for office. What would you do in such a case, Mr. Cyrowski?

"Would you not revolt against such a compatriot, especially at present, when the Germans are depriving your fathers of all the divine and human laws?

"Would you not grasp your pen to put an end to such a practice for once and ever?

"Doubtless you would do so, because in such contingencies the memory of your downtrodden fatherland and prosecuted faith and the care for the future of your nation would be dearer to you than all the worldly considerations, dearer than your own brother, sister, or even father.

"Just consider yourself in this position for a moment, Mr. Cyrowski, take into your hands this year's candidate's ticket, glance at the name of the senatorial candidate from the Second district on the Progressive list and  *  *  *  judge!

"If you will render an unbiased judgment, if you will read that unfortunate item as a Pole and a Catholic should read it, then you will feel a sting of shame for the imputed deed, and with your hand on your heart

you will repeat thrice over—*Mea culpa*—*mea culpa*—*mea maxima culpa.* Through my fault, through my fault, through my most grievous fault."

On the 23d of the same month the following article appeared:

"Poles Are No Bandits.

"Our case with Mr. Cyrowski, whom we accused of having declared himself a German and a Lutheran in a pamphlet circulated and distributed in the city, took an unexpected turn.

"We gained a new enemy, the local German paper, instructed by Mr. Cyrowski. It attacks the Polish Daily for the truth it printed, namely, that the German Hakatists are the most abominable robbers permitted to exist on the surface of this globe.

"We cite the German article verbatim, and those wishing to read the original we direct to No. 16721 of the Abend Post. This article reads as follows: [Quoting the article.]

"Thus wrote the German paper, informed by Cyrowski. This information, however. is another slap at the Polish people, which Mr. Cyrowski struck through the Germans, who always were, and ever will be, enemies of the Poles.

"Mr. Cyrowski dares to say that he feared bodily harm, or, in other words, of being beaten up. That is such a slander as only a Pole of the size and caliber of Cyrowski would be guilty.

"How is that Mr. Cyrowski? So you deemed Poles to be bandits, barbarians, ready to commit assaults on you? How would you dare to insult the people? How could you dare to slander the Poles through the instrumentality of the Germans?

"Oh! no, Poles act differently in such instances. They know enough not to extend the hand, and to pass without recognition a man who denies his nationality and faith but they don't know how to commit assaults and be bandits.

"You are convinced of that in your own life, Mr. Cyrowski. Do you not remember a certain evening when you, as we will hereafter write, preached in a certain Woodward avenue church, and criticized the Poles and called them drunkards and slaves? No hand

was raised against you then, and none demanded satisfaction for the slander of the Polish honor. Forgive those who are of weak spirit for they do not know what they are doing was the rule used by the Poles. You were regarded as weak in spirit and forgiven many things, but today, having passed the required examination of maturity, and when we are convinced that you are so poor in spirit as you appeared to be, you have to answer for all these slanders of the Polish name. You may go to William of Prussia himself and ask his curses on the Polish people and forewarn us against our Daily, but thereby you will not stop us from fighting all those Poles who swore allegiance with the Germans against the Polish people.

"We also told the Germans that our article contained an indirect attack on Lutherans. As far as that is concerned, you and your Prussian friends may take notice that our Daily always regarded the Prussians as robbers of the lands of our fathers, the torturers of our Wrzesen children, the persecutors of our rural and labor population, the intelligent class and of our clergy. For those we have only spit in our mouths.

"Of course, we understand very well that the German community is composed of decent Saxons, Bavarians, and several other noble groups and individuals. Our remarks don't pertain to them. But we hate the Prussians and all Polish renegades whom we regard as their equals."

The following paragraph from a pamphlet of the Civic Uplift League, which published a list of the candidates for the various public offices, was the foundation of the publications and was relied upon for the defense of good faith. the only defense offered:

"Progressive County Ticket. State Senator, Second district, 5th, 7th, 9th wards of Detroit.

"Aug. Cyrowski. Res. 905 Russell Street. Lawyer, 905 Russell St.

"Married, with family, owns home. Graduate of Detroit College of Law. Age 35 years. German Lutheran. Highly recommended by those who know, him."

The plaintiff denied each and every statement represented as coming from him in the libelous articles.

Plaintiff recovered a verdict upon the trial for $10,-000 damages for loss of business or professional gains as an attorney and $5,000 for injured feelings. Upon a motion for a new trial the amount of the verdict was reduced to $5,000 for damages for loss of business, while the verdict for injured feelings was allowed to stand. The errors assigned refer to the admission of evidence, the court's charge to the jury, and the refusal to grant a new trial.

KUHN, C. J. (*after stating the facts*). The first assignment of error relates to the testimony given by Dr. Sadowsky, who testified that sleeplessness, headaches, and loss of weight would be the natural results of mental anguish suffered by the plaintiff because of the libels published against him. This testimony was offered and received for the purpose of proving that the mental anguish was real and had expression. That mental anguish and suffering is a proper element of damages is not disputed, but it is urged that evidence of physical pain and disability is too remote in character and cannot be considered the usual, ordinary, or necessary consequences of the wrong. While it is true that no recovery can be had for physical illness or ailment claimed to be a result of the libel, no such claim of damages was submitted to the jury, and we cannot see any impropriety in admitting the testimony to show the severity of the mental anguish which was a proper subject of damages. It must be borne in mind that the article in question was clearly libelous *per se* and that a retraction was demanded. In place of a retraction other articles were published similar in tenor to the first. A plea of justification was filed, but no effort to justify it was made on the trial.

The next assignment of error relates to the admis-

sion of the testimony of statements of third persons not produced as witnesses relating to remarks made by them, their conduct, and opinions as exhibited and expressed by them concerning the plaintiff after some time had elapsed from the publication of the alleged libelous attack. It is claimed that this testimony was incompetent on the ground that it was hearsay. The declaration in the instant case alleges the following as to damages:

"In consequence of the committing of which said grievances by the defendants, the plaintiff has not only been greatly injured in his good name, credit, and reputation and esteem, and has been brought into public scandal, ridicule, and disgrace, has been and is shunned by many persons, but also, by means of which the said plaintiff has been and is greatly injured in his said practice of his said profession, and has fallen into great discredit, disgrace, dislike and disrepute amongst his clients and amongst the Polish people residing in said State of Michigan and elsewhere generally and amongst other good and worthy citizens of the State of Michigan with whom he had dealings in his profession and otherwise, as aforesaid, and who by reason and on occasion of the writing and publishing of said libel have altogether refused to have any further dealings with him in his profession as aforesaid, and plaintiff has been greatly vexed and harassed and injured thereby, and has lost and been deprived of great gains and profits in his said profession, which would have arisen and accrued to him had not the said defendants composed and published and caused the same to be composed and published as aforesaid the said false, malicious, defamatory, and injurious libel of and concerning said plaintiff; and plaintiff, by reason of said false, malicious, defamatory, publication as aforesaid, lost his said position of pre-eminence amongst the Polish people of said State of Michigan and his said representative capacity thereof and his said choice of high political honors, and also thereby suffered great mental pain, anguish, and mortification and thereby he is and was otherwise greatly injured."

The plaintiff claimed that he had become a leader

among the Polish people, and that he had established himself in a position of trust and confidence among them, and as a result of the libelous attack his good reputation was destroyed, which resulted in great pecuniary damage to him in the loss of business as a practicing attorney. This element of damage is particularly set forth in the declaration, and it would seem proper to show the fact that the libelous article had been read by proving the statements and conduct toward him of persons who had in all probability read the article. A similar question arose in *Park* v. *Detroit Free Press*, 72 Mich. 560 (40 N. W. 731, 1 L. R. A. 599, 16 Am. St. Rep. 544), where Mr. Justice CAMPBELL, in speaking of similar testimony, said:

"Plaintiff was not allowed to show that various other persons called his attention to the libelous article. We can see no reason why such facts were not pertinent. The mischief of a libel consists in the fact that it is actually seen by third persons. The circulation of a paper is allowed to be shown, as making it probable that the article has been read by several persons. Evidence of actual knowledge cannot be inferior to presumption. In *Steketee* v. *Kimm*, 48 Mich. 322 (12 N. W. 177), a claim was made that there could be no presumption in an American community that articles in Dutch would be read by any one; but we had no difficulty in finding that Hollanders could and might do so. It would certainly have been proper in that case to show that Hollanders actually did read the libel, and there was convincing proof that it affected the plaintiff's business. In many, if not most, cases, actual pecuniary injury to business could not be shown without incidentally or directly indicating that there must have been individual readers."

The authorities seem also to agree that the rule against hearsay is not violated by such testimony because the truth of the remarks is not at issue, but the point in controversy is rather the uttering of the libelous remarks. See 1 Greenleaf on Evidence, § 100;

196—Mich.—42.

2 Jones on Evidence, p. 648. In the case of *McDuff* v. *Detroit Journal Co.*, 84 Mich. 5 (47 N. W. 671, 22 Am. St. Rep. 673), by the testimony disputed an attempt was made to show that the plaintiff was slighted by certain acquaintances. It was held that it was inadmissible because the allegation in the declaration as to damages was general, and no special damages were alleged. The declaration in this case alleges special damages, and the testimony in question was therefore proper in support thereof.

The third assignment of error had to do with testimony, which was admitted, of third persons who advised the editor of the defendant publishing company to question the plaintiff about the truth or falsity of said alleged libelous article before publication. We are of the opinion that it was properly admitted as bearing upon the good faith of the defendants and as showing malice.

Another assignment of error relates to the admission of evidence of plaintiff's good reputation previous to the publication complained of. In this State, as held in *Hitchcock* v. *Moore*, 70 Mich. 112 (37 N. W. 914, 14 Am. St. Rep. 474), the rule is that the law presumes that the character of a plaintiff is good until attacked, and he can safely rest upon that presumption, but nevertheless in this case we find a plea of justification filed which is in effect putting upon the record a repetition of the defamatory charge and includes a deliberate averment of its truth. No attempt was made on the trial to justify and it must be said that it takes it from under the rule above referred to as the plea clearly put his reputation in issue.

Testimony was offered and admitted concerning the early training and life of the plaintiff. We see no error in admitting this testimony as it was helpful to the jury in determining what the injury from the libelous declaration was.

Complaint is made of the charge of the court in that it did not give the defendants' theory of the case and did not give proper instructions as to the liability of defendant Welzand and on the subject of malice. The article being clearly libelous *per se,* and the defense being justification in which the defendants admittedly failed, the trial judge was justified in submitting to the jury the only real question for their consideration, to wit, damages, which he did in a clear and able charge which outlined the entire situation with great fairness. Mr. Welzand was a stockholder, director, and general manager of the publication. It appeared from the evidence that Zielinski, the editor, told Welzand that he was going to write about the plaintiff after he had received the pamphlet of the Civic Uplift League, and that the writers of the paper's editorials were under his authority and discipline. Welzand testified that after reading the article he called Zielinski's attention to the fact that they might get into trouble over publishing it, but did nothing to prevent him from writing further on the subject, and, after answering plaintiff's letter demanding a retraction, made no effort to see that a retraction was published. His connection with the corporation was such that the court was justified in submitting his liability to the jury.

Other assignments of error, not being specifically mentioned, have been examined and found to be without merit. We are satisfied that the verdict as modified by the trial judge on the motion for a new trial is not excessive under the proofs in this case.

It not affirmatively appearing that the trial resulted in a miscarriage of justice, the judgment is affirmed.

STONE, OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred. PERSON, J., did not sit.