FRAME v. ADAMS.

1. Libel and Slander—Reputation—Evidence.
   Proffered testimony as to plaintiff supervisor's reputation previous to publication of claimed libel in which it was asserted that he padded budgets, practiced dishonesty· and· was lacking in principles of decency was erroneously excluded on his case in chief, where his reputation was put in issue not only by the declaration but also by the answer wherein· defendants pleaded justification as that the statements were true.

2. Same—Justification—Nature of Plea..
   The plea of justification is in the nature of confession and avoidance..

3. Same—Reputation—Presumptions—Evidence.
   Rule that good reputation of plaintiff in libel action will be presumed ·and evidence thereof excluded does not apply, where his reputation is put in issue either by the pleadings or the proofs.

Appeal from Oakland; Holland (H. Russel), J. Submitted April 4, 1956. (Docket No. 14, Calendar No. 46,313.) Decided May 14, 1956. Rehearing denied June 28, 1956.

Case by Dudley P. Frame against Fannie Adams, Betty Lewis and Marion White for damages arising from libel. Verdict and judgment for defendants. Plaintiff appeals. Reversed and remanded.

*Beer & Osgood,* for plaintiff.

*Dell & Heber,* for defendant Adams.

*William H. Wilmot,* for defendants Lewis and White.

Smith, J. This is an action for libel. The·plaintiff, who had been elected to office as supervisor of Southfield township in both 1947 and 1949, was run-

REFERENCES FOR POINTS IN HEADNOTES
[1] 33 Am Jur, Libel and Slander § 279.

ning for reelection. On Thursday of the week immediately preceding the election defendants White and Lewis, co-owners and publishers of the "Four Corners Press," a weekly newspaper, printed on its front page an "open letter to the voters of Southfield township," signed by defendant Mrs. Fannie Adams. This letter read as follows:

"In the many years I have served the people at Southfield township, I have never before taken a public stand against any candidate for supervisor. Fourteen of those years were spent working with 3 different supervisors whom I could look up to and respect, and if mistakes were made, I knew they were honest mistakes.

"The time has come when I must warn the people of the dangers in retaining in office as supervisor a man who has shown a great lacking in principles of decency, whose attempts to usurp power by taking away from the people the right to petition or to be heard are grim facts.

"The turning of the spotlight on Southfield township through false reports to county and State has resulted in severe criticisms with loss of prestige which can never be figured in dollars and cents.

"His false reports for the past 3 years is the manner in which he obtained a tax reduction rate. The 1950 report to the county that there was only $440,-000 valuation for new houses in all of Southfield township although one of his political advisors stated that he alone had built more houses during that year in Lathrup Townsite.

"Is depriving schools of necessary revenue a saving? Is paying $7,000 to prove those reports a reduction? Will dishonesty continue to give you tax reductions? Is a man who has fought every move for better schools one who should be retained? His padded budgets to take additional funds from the schools make a glaring record in Pontiac.

"If your confidence in my past years of service has warranted your support, my appeal to you now

is to express that confidence by voting February 19th for Mr. William Roeser, a man who is highly respected by ALL his neighbors in his own community and who possesses the qualifications to do an honest job.

FANNIE ADAMS
Southfield Township Clerk"

Plaintiff, asserting that he was libeled by such publication, demanded that retraction be published by defendants White and Lewis. The request was refused. Suit followed. Plaintiff's declaration set forth the libel, and other elements of the libel pleading, charged that plaintiff had suffered humiliation, mental anguish, and injury to his reputation, which was thereby put in issue, and demanded actual and exemplary damages. In reply the defendants admitted the publication and pleaded justification, *i. e.,* that the statements made were true. Additional matters of defense pleaded need not here be summarized. The case went to trial before a jury, at the conclusion of which a verdict of no cause of action was returned and judgment thereon entered. Plaintiff's motion for new trial was denied by the trial court, following which plaintiff took a general appeal to this Court.

The plaintiff-appellant urges upon us several grounds for reversal, the first of which relates to evidence of plaintiff's good reputation prior to the publication of the alleged libel. As a part of plaintiff's case in chief, counsel for plaintiff called to the stand one Annie L. Castle. After a series of questions and answers, the record shows the following:

"I was in the township of Southfield often before February 15, 1951. I certainly did know Mr. Frame from the time he went in office.

"*Q.* Were you acquainted with his general reputation in the township of Southfield before February

15, 1951? Do not answer until Mr. Dell has stated his objection.

"*Mr. Dell:* I object—.

"*The Court:* The objection is sustained."

In connection therewith and explanatory thereof the record shows also the following:

"*Mr. Beer:* Just one moment. Your Honor, please, I would like to hold a conversation of a legal nature with the court and rather than to have the jury leave, I wonder if we might adjourn to the court's chambers.

"*The Court:* I think it would be very convenient to have the jury leave.

"(Jurors excused from the court room.)

"*Mr. Beer:* May it please the Court, I would like the court in connection with the ruling of the court, in connection with my question to Mrs. Castle as to whether or not she was acquainted or had knowledge of his reputation in that area; there was an objection made but no reason given for the objection and the objection was sustained and I didn't understand why. I would like enlightenment on that particular objection. I presume that Mr. Dell makes the objection on the basis that reputation may not be proven as part of our principal case, but I may be in error; I want to be sure before I continue to peruse [pursue?] the matter and become obnoxious.

"*Mr. Dell:* Counsel is quite correct. He has stated my theory correctly. Reading from the syllabus in the case of *Hitchcock* v. *Moore,* 70 Mich 112 (14 Am St Rep 474), I read these words:

" 'It is not competent for a plaintiff in a slander suit to introduce evidence of his good character as a part of his main case, even though upon his cross-examination he has been inquired of concerning specific facts which, if true, would tend to weaken it, and lessen his good reputation.'

"I submit that is still the law in Michigan today. Stated in my own words, the rule is this: If the defendants for the sake of mitigating damages attack

the general reputation of the plaintiff, then the plaintiff may introduce evidence to sustain his good reputation and show his damages, but as part of his main case, as part of the substantive proof, he is not allowed to establish his own reputation. The case which I have cited, contains quite a discourse on the reason for the ruling and the soundness of it; as far as my research has shown, that has never been changed.

"*Mr. Beer:* May it please the court, now that Mr. Dell and myself are agreed as to what I thought his objection was—

"(Legal argument.)

"*The Court:* The ruling of the court previously made must stand and the objection is sustained."

A distinction made in the cases and the texts (*e.g.*, 1 Wigmore, Evidence [3d ed], § 70) should be noted and must be carefully observed: the distinction between the presently sought use of reputation, and its attempted use as bearing on the question of damages. In the application of evidence of reputation to the damage issue, the theory of the defendants is, usually, that plaintiff's reputation is such that slander can do him but small injury. With respect to such use the courts are not agreed. There is indecision whether oppression of the fallen or repentant is less reprehensible than traducement of the righteous. We need not resolve this issue, however, for in our case the evidence is offered under a different theory and for a different purpose. Here it is the plaintiff himself who is offering evidence of his good reputation on his case in chief, presumably as bearing on the probability that he padded budgets, practiced dishonesty and was lacking in principles of decency, which, obviously, are charges of considerable breadth, involving his whole character.

Cases there are in which the proffered evidence has been disallowed. Many such are cases in which

the defendants have pleaded the general issue and thus denied the whole substance of the declaration. Such were the pleadings in *Hitchcock* v. *Moore*, 70 Mich 112 (14 Am St Rep 474). The presumption employed is that plaintiff's character is good until attacked and that he may rest safely upon the presumption. It is argued that no evidence he can offer can increase the virtue of his unblemished reputation. This view has not gone unchallenged. The supreme court of Virginia commented thus (*Adams* v. *Lawson*, 58 Va 250, 258 [94 Am Dec 455]):

"After the plaintiff had given evidence as to the writing and publication of the libel, and before the defendant had introduced any evidence, the plaintiff offered to introduce evidence to prove that before the publication of the libel, his general character for truth and honesty had been good. The defendant objected to the admission of this evidence; but the court overruled the objection: and the admissibility of this evidence constitutes the only remaining question in the case."

The court, after noting the differences of opinion upon the question, and the conflicting theories presented, concludes (pp 260, 261):

"It being thus important to the decision of the case that the jury should hear evidence as to the character of the plaintiff, either generally or in reference to the particular subject matter of the slander or libel, can any good reason be assigned why it should depend on the option of the defendant whether they shall hear such evidence or not? Such a one-sided rule would not be fair and equal as between the parties, would often defeat the justice of the case, and might operate great hardship upon a plaintiff who is unknown to the jury. The defendant would not open the door by an attack on his character, and he would not be allowed to sustain it by evidence in chief. It does not appear to me to

be a satisfactory answer to say, that the plaintiff ought to stand upon the presumption which the law makes, in the absence of evidence to the contrary, that his character is good. Why should the plaintiff be compelled to rely upon such a general presumption, when he offers to prove that the presumption, in his particular case, is in accordance with the fact? And what right has the defendant to complain, since the evidence is only offered to establish with more certainty what the law would presume to be true in the absence of all evidence? I am not aware of any case in which a mere presumption that a fact exists, which is liable to be rebutted, is held to preclude a party in whose favor the presumption is made from introducing evidence to prove that the fact is really so. And besides, the character of the plaintiff is always impeached when the slander or libel imputes crime or moral delinquency, and the charge moreover may proceed from a person whose known position and character give it weight with the jury."

Such, also, was the reasoning of the Connecticut court in *Bennett* v. *Hyde,* 6 Conn 24, 26, 27:

"The plaintiff's character is not made the subject of inquiry, at the defendant's option, and shut out of view, or the subject of investigation, as shall best subserve the defendant's pleasure and interest. To a rule so inequitable, for the want of mutuality, the courts in this State have never acceded; but they have recognized and acted on the principle, that the final object of the plaintiff's suit, is the vindication of his character; and that his reputation, of consequence is put in issue, by the nature of the proceeding itself."

See, also, *Shroyer* v. *Miller,* 3 W Va 158.

The plea of justification has, in addition, in and of itself, frequently been held to justify the introduction of such testimony. Such a pleading is in the nature of confession and avoidance. (53 CJS, Libel and Slander, § 177, p 275). Far from denying

the publication, or the innuendo, there is a reassertion of the charge, and a reassertion not in the heat of debate or partisan contest but in the calm of the afterthought. Not surprising is it, then, that the plea of justification has resulted in a modification of the general rule. It was put thus in an early case (*Harding* v. *Brooks,* 5 Pick [22 Mass] 244, 247):

"But Starkie seems to admit the rule to be different, where the defendant sets up a justification of the words spoken by averring the truth of the facts alleged to have been slanderously published. And there is reason in this, for the very placing upon the record a solemn averment of the truth, will have a tendency to impeach the character, and the attempt to prove it, though it may fail, may have so far succeeded as to raise an imputation against the character. In such case it seems to be just, that the plaintiff should have the right, by proof of the general tenor of his conduct and character, to repel such imputations, and to let his reputation in the community and his neighborhood outweigh the suspicions which might arise from an incomplete effort to prove him guilty of the facts which are charged against him. It is upon this principle, and with this view, that a man on trial for crime is allowed to show a fair general character to the jury; and the cases are quite analogous."

So it is that we find the frequent holding, as in *Bryan* v. *Gurr,* 27 Ga 378, 381, where the court, speaking through Lumpkin, J., holds:

"There was no error in the court in admitting testimony in favor of the general character of the plaintiff, the same having been put in issue by the plea of justification filed by the defendant, or at least what was intended as such by the defendant, and so understood and treated by counsel on both sides, and by the court during the process [progress?] of the trial."

Such, indeed, was the holding of this Court in *Cyrowski* v. *Polish-American Publishing Co.*, 196 Mich 648, 658, where it is said:

"Another assignment of error relates to the admission of evidence of plaintiff's good reputation previous to the publication complained of. In this State, as held in *Hitchcock* v. *Moore,* 70 Mich. 112 (14 Am St Rep 474), the rule is that the law presumes that the character of a plaintiff is good until attacked, and he can safely rest upon that presumption, but nevertheless in this case we find a plea of justification filed which is in effect putting upon the record a repetition of the defamatory charge and includes a deliberate averment of its truth. No attempt was made on the trial to justify and it must be said that it takes it from under the rule above referred to as the plea clearly put his reputation in issue."

Defendants seek to distinguish this holding on the ground that in the *Cyrowski Case* there was no attempt made to sustain the plea. The distinction made, however, is not valid. It is the solemn reassertion by way of justification which puts the character in issue, whether or not evidence in support thereof is forthcoming. (The evidentiary point may, however, become critical on the question of malice, Newell, Slander and Libel [3d ed], § 429.) 4 Chamberlayne, Treatise on the Modern Law of Evidence, § 3281, puts the rule with precision:

"Evidence of the good character of the plaintiff in an action for libel or slander has frequently been received where the alleged slanderous words charged a crime and the defendant pleaded justification as that the words spoken were true. The evidence has been received even where the alleged slanderous words did not charge a crime. Where no justification is pleaded, or where a justification is pleaded, but

no evidence offered under the plea, the evidence is rejected."

It is our opinion that well-reasoned modern cases fully support the Chamberlayne treatise and that the testimony proffered should have been admitted. The court of civil appeals of Texas has given the matter careful consideration and has held thus:

"Appellant, by its first assignment of error, complains that the court committed prejudicial error against it by admitting this testimony. The contention advanced by the proposition under this assignment is that:

" 'In an action for libel, a plaintiff is not permitted to introduce evidence of his good character and general reputation, and the fact that he has been an office holder, unless his reputation has been first attacked by the defendant.'

"Subject to certain explanations, we can readily agree with this contention. We do not understand that the attack by the defendant upon the character or general reputation of the plaintiff, in order to admit such proof as here complained of, must be made through witnesses placed upon the stand at the trial. It is enough that the publication against which the defendant is called to answer is itself such an attack, or that such an attack is made by the defendant's pleadings, or that the nature of the action involves the general character of a party or goes directly to affect it. * * *

"Appellant, in its answer, alleged that all these charges were true. We think that not only the charges contained in the publications, but the allegations that they were true, involved the general character of the plaintiff and his wife and rendered the evidence complained of admissible." *Houston Chronicle Pub. Co.* v. *Tiernan,* 171 SW 542, 544.

Our conclusion may well be expressed in the words of a court of our sister State of Ohio in *Sloneker* v.

*Van Ausdall,* 106 Ohio St 320, 325 (140 NE 121, 28 ALR 759):

"From these various decisions, a line of holdings may be culled out, modifying the arbitrary rule to the extent that the good reputation of the plaintiff will be presumed, and proof thereof be inadmissible except where that reputation is attacked either in the pleadings or the proof."

The judgment of the lower court is reversed and set aside and the case remanded for new trial. Costs to appellant.

DETHMERS, C. J., and SHARPE, BOYLES, KELLY, CARR, and BLACK, JJ., concurred.

The late Justice REID took no part in the decision of this case.