SANDS v. SEDWICK. (No. 8095.)

(Court of Civil Appeals of Texas. Ft. Worth. Feb. 13, 1915. Rehearing Denied March 6, 1915.)

1. VENUE ☞70—APPLICATION FOR CHANGE—CONTEST.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 1913, providing that where application for change of venue is made the same shall be granted, unless the credibility of the applicant, or the truth of the fact set out, is attacked by affidavit, and if attacked, the issue shall be tried, and where defendant's application for a change of venue was opposed by plaintiff, supported by his affidavit alone, denial by the court of the application was proper.

[Ed. Note.—For other cases, see Venue, Cent. Dig. §§ 122–126; Dec. Dig. ☞70.]

2. ANIMALS ☞44—POISONING STOCK—CIVIL ACTION—EVIDENCE.

In an action for poisoning stock, where plaintiff's mules and horses were found dead in his pasture, their tracks leading to deposits on the ground of sulphur, mixed with some white powder, it being admitted that the animals were poisoned, and the evidence strongly tending to show that they were poisoned by the sulphur and powder, evidence that a tin bucket, containing such a mixture, was found on defendant's premises, was admissible, the question whether the mixture was poisonous or was the same mixture as was found in the pasture being for the jury.

[Ed. Note.—For other cases, see Animals, Cent. Dig. §§ 115–122; Dec. Dig. ☞44.]

3. ANIMALS ☞44—POISONING STOCK—CIVIL ACTION—EVIDENCE.

In an action for poisoning stock, evidence that tracks were seen leading from defendant's premises to plaintiff's pasture, where the stock was found dead, and returning towards defendant's residence, was admissible, though no attempt was made to show that the tracks were made by the defendant; any objection going to the weight of the evidence, not to its admissibility.

[Ed. Note.—For other cases, see Animals, Cent. Dig. §§ 115–122; Dec. Dig. ☞44.]

4. ANIMALS ⬦═44—POISONING STOCK—CIVIL ACTION—EVIDENCE.

In an action for poisoning stock, where evidence that defendant, when first informed that plaintiff charged him with committing the act, called plaintiff a —— —— Jew, —— rascal, etc., was not inadmissible as being a mere exhibition of temper on the part of one first informed of a charge against him.

[Ed. Note.—For other cases, see Animals, Cent. Dig. §§ 115–122; Dec. Dig. ⬦═44.]

5. APPEAL AND ERROR ⬦═215, 544—RESERVATION OF GROUNDS OF REVIEW—OBJECTION.

Where defendant reserved no bill of exceptions, and did not even object to the giving of a charge to the jury concerning exemplary damages, he could not predicate error thereon.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1309–1314, 2412–2415, 2417–2420, 2422–2426, 2428, 2478, 2479; Dec. Dig. ⬦═215, 544.]

6. APPEAL AND ERROR ⬦═1068—EXEMPLARY DAMAGES.

In an action for poisoning stock, where defendant admitted that the animals killed were of the reasonable value claimed in the petition as found by the jury, and where the jury found merely a nominal sum above the value of the stock as actual damages, if the court's charge on the subject of exemplary damages was erroneous, the error was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4225–4228, 4230; Dec. Dig. ⬦═1068.]

7. ANIMALS ⬦═44—POISONING STOCK—SUFFICIENCY OF EVIDENCE.

In an action for poisoning stock, evidence *held* to sustain payment for plaintiff.

[Ed. Note.—For other cases, see Animals, Cent. Dig. §§ 115–122; Dec. Dig. ⬦═44.]

Appeal from District Court, Shackelford County; W. J. Oxford, Judge.

Action by John F. Sedwick against Frank Sands. Judgment for plaintiff, and defendant appeals. Affirmed.

Thorp & Reynolds, of Throckmorton, and A. A. Clarke, of Albany, for appellant. Walter L. Morris, of Albany, for appellee.

BUCK, J. This suit was brought by appellee against appellant for damages alleged to have been caused by appellant's placing poison in the pasture of appellee for the purpose of poisoning appellee's stock, whereby nine head of mules and three head of horses belonging to appellee died. Appellee claimed $975 actual damages and $1,000 exemplary damages. The suit was tried at the April term, 1914, of the district court and resulted in a judgment for the appellee for $975 actual damages and $25 exemplary damages.

In the course of the trial appellant, through his counsel, admitted that the animals were poisoned, and that they were of the value alleged in plaintiff's petition, but denied that appellant placed the poison in appellee's pasture or had any connection with the poisoning of the stock.

[1] In his first assignment appellant complains of the action of the court in permitting the plaintiff to contest the application and motion of defendant for a change of venue; the written contest filed by plaintiff in opposition to defendant's motion for a change of venue being supported by plaintiff's affidavit alone. Appellant urges that the law contemplates that the contest must be supported by the affidavit of some compurgator other than the party to the suit himself. Article 1912, Vernon's Sayles' Tex. Civ. Stat. provides:

"A change of venue may be granted in any civil cause upon application of either party, supported by his own affidavit and the affidavit of at least three creditable persons, residents of the county in which the suit is pending," for certain designated causes.

Article 1913 provides:

"Where application for a change of venue is made in conformity to the requirements of the preceding article, the same shall be granted, unless the credibility of the persons making the application for a change of venue, or their means of knowledge, or the truth of the facts set out in the said application, are attacked by the affidavit of a credible person; and, if such application is thus attacked, the issue thus formed shall be tried by the judge, and the application granted or refused, as the law and the facts shall warrant."

Prior to the amendment of 1893, article 1272, now 1913, read as follows:

"Where application for a change of venue is made in conformity to the requirements of the preceding article, the same shall be granted unless it appears to the satisfaction of the judge, upon proof made before him, that the persons making the affidavit are not credible persons."

As the law then existed, the only issue to be determined by the judge in passing upon an application for a change of venue when made in compliance with the statutory requirements was as to the credibility of the persons who supported by their affidavit the application. But, as will be seen by comparing the amended article with the old, the trial court may now consider, in addition to the question of the credibility of the affiants, "their means of knowledge, or the truth of the facts set out in said application," and if these questions are properly put in issue by a controverting affidavit of "a credible person," then the issue thus formed shall be tried by the judge and the application granted or refused, as the law and the facts shall warrant. Since in the determination of these issues no probative force is given to such affidavits, whether made in behalf of the applicant or in behalf of the adverse party, and since such affidavits are not admissible in evidence at all (Cotton v. State, 32 Tex. 614; Winkfield v. State, 41 Tex. 154; Farley v. Deslonde, 58 Tex. 590), it would appear that the application and the answer thereto constitute merely verified pleadings upon the issue of a change of venue. The statute provides the character of verification to be made by the applicant, but fails to stipulate as to who shall verify the answer thereto, except that the affidavit must be made by a "credible person." In Dunn v. State, 7 Tex. App. 600, the affidavit in resistance to the

application of defendant for a change of venue was made by the district attorney, and the defendant excepted to the sufficiency of said affidavit on the ground that the district attorney was not a resident of the county of the trial, was not acquainted with the people in the county, and had no knowledge of the sentiment or feeling prevailing therein as to the defendant's case, and no means of knowing of the existence of the prejudice complained of; that he was not a disinterested witness, and in the nature of his office was not a proper person to make said affidavit, and the defendant prayed that the affidavit be stricken out, which motion was by the trial court overruled. The article of the Code of Criminal Procedure with reference to a change of venue was at that time as follows:

"The credibility of a person making an affidavit for change of venue, or their means of knowledge may be attacked by the affidavit of a credible person, and the issue thus formed shall be tried and determined by the judge and the application granted or refused as the law and the facts shall warrant." Article 583.

The court in its opinion, after referring to the fact that the article above quoted was a recent enactment and was, in effect, an amendment of and an addition to, what had before been provided on the subject of change of venue, when asked by a defendant in a criminal prosecution, said:

"Now by reading the former law  *  *  * and considering it in connection with the recent enactment, to our minds the intent of the Legislature in the enactment of the later article is apparent. Whilst it is provided in article 578 that a change of venue may be granted on the written application of the defendant, supported by his own affidavit and the affidavits of at least two credible persons, residents of the county where the prosecution is instituted, for either of two causes mentioned in the article—and there are but two causes on account of which a change of venue will be granted on the application of a defendant—it directs that the court shall determine the *truth and sufficiency* of the cause set out in the defendant's application, but prescribes no definite rule by which the court shall be guided in determining the truth and sufficiency of the defendant's application; and this defect in article 578, in our opinion, the Legislature intended to supply by the enactment of article 583. To our mind, article 583 was *intended to and does* provide for the formation of an issue to be tried by the court on the application, in that it authorizes the state, on affidavit of a credible person, to attack the credibility of the persons making affidavits for a change of venue, or their means of knowledge. In other words, the issue tendered the state by the defendant in his application may be accepted by the state, by proposing to show to the court either one of two things—that the persons who made the affidavit were not credible persons, or that they did not possess the necessary means of knowledge as to the facts to which they had deposed, and these means are provided for in the later article of the Code. It is not provided in this article that an issue is to be formed as to the truth and sufficiency of the application, nor indeed was it necessary, as article 578 provided for that by requiring the judge to judge of them; but if it is intended to make an issue as to the credibility of the persons, or the means of knowledge of those who swear for the change of venue, then, by article 583, this may be done

by attacking either by the affidavit of a credible person.

"With regard to the present case, we are of the opinion that the affidavit of a district attorney put in issue both the truth and the sufficiency of the application, and as well as the credibility of the persons who made the affidavit for a change of venue, or their means of knowledge, that it is competent for the district attorney to make the affidavit, and that the court did not err in overruling the exceptions of the defendant on either ground of exception."

We find no authority supporting this assignment, and we are cited to none by the appellant, and we do not believe that the trial court erred in permitting the plaintiff to contest the application and motion of defendant for a change of venue upon a written contest filed by plaintiff and supported by his affidavit alone, and we hold that the plaintiff in this case is a "credible person" under the terms of said article 1913, and therefore the first assignment is overruled.

In his second assignment the appellant complains that the trial court erred in refusing and overruling his application for a change of venue—

"because the testimony of the witnesses placed upon the stand by the plaintiff himself upon the question of a change of venue showed clearly that there is that amount and degree of prejudice against the defendant in Shackelford county such as to render it next to impossible for him to obtain a fair and impartial trial in said Shackelford county," etc.

The trial court allowed considerable latitude in the introduction of testimony upon this issue, and while the evidence is conflicting, we think that it is amply sufficient to sustain the court's action, and therefore the second assignment is overruled.

[2] In his third assignment appellant complains of the action of the court in allowing the witness Henry Herron to testify, over the objection of the defendant, that he found on the premises of the defendant a can or tin bucket containing sulphur, or something that looked like sulphur, with some white stuff mixed with it, because, as claimed by appellant, it was not shown that the can or bucket contained poison of any kind, and was calculated to prejudice the minds of the jury against the defendant. The evidence shows that appellee's stock were found dead in one of his pastures, about a mile or a mile and a half from appellant's home; that near to where they were discovered dead there were found on the ground deposits of what appeared to be sulphur mixed with some white powder, and that leading from such deposits to where the various stricken animals were found dead were tracks, tending to show that, after partaking of this mixture, the animals walked to where they were later found. It was admitted that the animals were poisoned, and the evidence very strongly shows that they were poisoned by eating of this substance, and we think it was certainly admissible to show that on appellant's premises shortly after the discovery of the dead animals there was found a receptacle

with a mixture in it apparently of the same kind and character as that found in appellee's pasture. As to whether or not this mixture was poisonous, whether or not it was the same mixture as found in the pasture, were questions for the jury, and the objection to this testimony goes rather to the weight thereof than to its admissibility. The assignment is overruled.

[3] In his fourth assignment the appellant complains of the admission of testimony on the part of William Biggs, to the effect that he found tracks leading from and toward the defendant's premises in the direction where the stock were found dead and returning in the direction of the defendant's residence; "it not being shown that the tracks were made by the defendant, or any attempt made to show that the tracks fitted or corresponded with the tracks of the defendant." For the reasons given in discussing the third assignment, this assignment is overruled.

[4] In his fifth assignment appellant complains of the action of the court in admitting the testimony of certain witnesses, to the effect that when the sheriff and his deputy went to the house of the defendant shortly after the alleged poisoning of the stock, and after defendant had been informed that plaintiff charged him with this offense, he, the defendant, cursed and abused plaintiff by calling him a ——— ——— Jew, ——— rascal, etc. Appellant insists that this was a mere exhibition of temper of one charged of crime by another when first informed of such charge, and was no evidence of any malice antecedent to the alleged commission of the offense. We do not believe there is any merit in the assignment, and it is overruled.

[5, 6] In his sixth assignment appellant alleges error in that part of the court's charge wherein the question of recovery of exemplary damages is submitted to the jury, in that the charge does not limit the amount of exemplary damages that the jury could find to the amount set up and prayed for in the petition. There does not appear to be any bill of exceptions reserved by appellant to the giving of said portion of the court's charge, or even objection made thereto, and therefore we cannot consider this assignment; but if we were to do so, in the light of the fact that it was admitted by the defendant that the stock killed were of the reasonable value of the amount claimed in the petition and found by the jury, and also that the jury found merely a nominal sum as such damages, we cannot see how any possible injury could have accrued by reason of the charge in the form given.

[7] In his seventh and last assignment appellant urges that the evidence is insufficient to support the verdict. While it is true that the evidence is entirely circumstantial, we feel that it is amply sufficient to sustain the verdict. It was admitted that the stock were poisoned, and the evidence strongly sustains the contention that they were poisoned by partaking of the mixture which was found deposited in appellee's pasture; that there were tracks leading to and from this place where the deposit was found, and that such tracks led in the direction of appellant's home; that appellant bore intense ill will towards the appellee, abused him, and applied to him various names and epithets, both before and after the alleged poisoning of the stock; that he refused to receive appellee's check in payment for some stock that one of appellee's employés was proposing to buy from the appellant for appellee; that the deposits found in the pasture seemed to be a mixture of sulphur and salt and some other whitish substance; that there was found on appellant's premises a bucket containing apparently the same kind of mixture; there was found at appellant's house several pounds of arsenic, and the stock had died from arsenic poisoning; that appellant seemed to bear a grudge against the appellee because of the fact that the former had in the latter's pasture some 50 or 60 acres which had been separated from the larger inclosure originally by a fence, but that this fence had disappeared in some way, and appellant charged some one with having stolen it, and this charge was made during the conversation with appellee's foreman, in which appellant abused appellee and declined to receive his check; that in talking to a neighbor and in reply to a remark "that it was hard to be charged with poisoning a neighbor's mules," appellant said:

"Well, I don't know; John F. Sedwick is a damned rascal, and the only way to reach some people is through their pocketbook."

It was further shown that appellant had, at least on one occasion, about two weeks before the poisoning of the stock, expressed his utmost disregard for mules in general, and remarked that the "mule was the meanest animal I ever saw, and that every damned one of them ought to be killed." Enough of the facts as supported·by the evidence is hereinabove given to show the character and trend of the evidence upon which the jury found the defendant guilty of poisoning his neighbor's stock, and we are not prepared to say that the trial court erred in refusing to grant appellant a new trial.

The judgment is hereby affirmed.