**BENNETT et al. v. JACKSON et al.**
No. 2523.

Court of Civil Appeals of Texas. Waco.

May 20, 1943.

Rehearing Denied June 17, 1943.

396

Martin, Moore & Brewster, of Ft. Worth, W. M. White, Jr., of Mexia, Hill D. Hudson, of Pecos, and Harris Brewster, of Ft. Worth, for appellants.

Scott Reed, L. W. Shepperd, and Bradley & Bradley, all of Groesbeck, for appellees.

HALE, Justice.

Appellants instituted this suit in the County Court of Limestone county against Franklin Jackson and others, seeking to set aside the prior order of that court admitting to probate the purported will of B. N. Jackson. The action was grounded upon allegations that the will was not written wholly in the handwriting of the testator and was not signed by him. From an adverse judgment in the County Court, appellants duly perfected their appeal to one of the District Courts of Limestone county where the case was tried de novo and resulted again in judgment against them. On appeal to this court the judgment of the District Court was reversed and the cause remanded on account of improper argument of counsel. See Bennett v. Jackson, Tex. Civ.App., 157 S.W.2d 158.

After the cause was remanded appellants filed and seasonably presented at the present trial their verified application for a change of venue, alleging as ground therefor that "there exists in this county a combination against the plaintiffs instigated by influential persons, by reason of which plaintiffs cannot expect a fair and impartial trial in this county." Appellees duly contested the application, denying under oath the truth of the allegations therein contained and pleading affirmatively that the means of knowledge of affiants in the application "is not such as to enable them to honestly, intelligently or correctly swear to the matters therein stated, which matters as aforesaid are not true and no reason exists why the plaintiffs cannot obtain a fair and impartial trial in Limestone county, Texas." The issue thus formed was tried by the judge, the application was refused and appellants excepted. Thereupon the case was tried on its merits to a jury. Upon findings that the purported will was wholly written in the handwriting of the testator and signed by him, the court again rendered judgment denying any relief to appellants and hence this second appeal.

Under appropriate points in their brief appellants contend that the judgment now appealed from should be reversed because the court erred (1) in refusing their application for a change of venue, (2) in overruling their challenge for cause directed against each of sixteen members of the jury panel, (3) in permitting each of eight witnesses to testify to hearsay statements made by the testator to them during his lifetime, in substance, that he was leaving the bulk of his property to Franklin Jackson, and (4) in permitting each of seven non-expert witnesses to testify that the handwriting in the body of the purported will and the signature thereto was that of the testator.

■■ The ultimate purpose of all rules of procedure is to secure to every litigant a fair and impartial adjudication of his rights under established principles of substantive law to the end that justice may be done. Rule 1 of Texas Rules of Civil Procedure. In order to accomplish this objective, certain qualifications, prerogatives and responsibilities are definitely required of, vested in and placed upon the trial judge, jury, witnesses, and each participant in all the courts. Reasonable adherence to the established rules by each and all, consistent with a proper exercise of sound judicial discretion, is indispensable to the administration of justice according to law as distinguished from justice according to the personal opinion of the individual attempting to assist in its administration. When a court of competent jurisdiction has rendered final judgment in a civil cause, it must be presumed a priori that the ends of justice have been met through the means of a fair and impartial trial, unless on appeal therefrom a prejudicial infraction is shown against some existing rule of procedural or substantive law. Rules 434 and 503 of Texas Rules of Civil Procedure.

■ Under Rule 257, which is the same as the pre-existing provisions of Article 2170 of Vernon's Tex.Civ.Stats., a change of venue may and should be granted in a civil cause upon the uncontested application of either party therefor, if the application is duly verified and shows the existence of facts inconsistent with the right of the applicant to secure a fair and impartial trial in the county where the suit is pending. However, under Rule 258, which is the same as repealed Article 2171, if the credibility of the persons making such application, or their means of knowledge or the truth of the facts therein set out are attacked by the affidavit of a credible person, then the issue thus formed must be tried by the judge. Moreover, when the application is duly made and contested in compliance with the rules, as was done in this case, the trial judge thereupon becomes vested with broad discretionary powers and charged with grave duties in determining from the evidence adduced at the hearing whether the application should be granted or refused. An abuse of discretion on the part of the trial judge is properly subject to review by a superior court, but unless an abuse of discretion is shown the decision below should not be disturbed on appeal. Freeman v. Ortiz, Tex.Civ.App., 136 S.W. 113; Id., 106 Tex. 1, 153 S.W. 304; Trammell v. Currie, Tex.Civ.App., 261 S.W. 827; Herd v. Wade, Tex.Civ.App., 63 S.W.2d 253 (error ref.); Gannaway v. Trinity Universal Ins. Co., Tex.Civ.App., 85 S.W.2d 345 (error ref.); Taylor v. Batte, Tex. Civ.App., 145 S.W.2d 1116.

More than fifty witnesses were examined at the hearing on appellants' contested application, their testimony covering 632 pages in the statement of facts. Obviously it would not be practicable to set forth a complete resume of all the evidence intro-

duced. The testimony of the jury panel regularly drawn for the trial of the case showed that a majority of the array had resided in the county many years, knew Franklin Jackson, had either bought or sold cattle at some time in his auction ring and some of them were his personal friends; the majority were well acquainted with one or more of the attorneys for appellees and some of them had been represented by one or more of such attorneys; most of the panel had heard about the case, some had heard it discussed, others had read about it in the newpapers, and some knew the results of the former trial; most of them knew one or more of the material witnesses who had testified on the former trial and some had transacted business with several of such witnesses. The testimony of the several attorneys for appellees showed how long each had practiced law in that county and in a general way the nature and extent of the professional and business connections and acquaintances of each. J. E. Bradley had practiced law over forty years, had been County Attorney and County Judge, was at that time Mayor of Groesbeck, vice-president of the Farmers State Bank in Groesbeck, president of the First National Bank in Thornton, owned several farms and was well acquainted throughout the county; B. L. Bradley had practiced approximately twelve years, was president of the Citizens National Bank in Groesbeck and well acquainted over the county generally; Scott Reed was born and reared in the county, was a Captain in the Army during World War 1, was a former County Attorney and at the time of the hearing was a member of the local Draft Board and well connected throughout the county; Carl Cannon had been County Judge for two terms and was a candidate for re-election at the time of the hearing; L. W. Shepperd had practiced law at that bar for 24 years, was a former County Attorney, had tried many contested cases and was well and favorably known throughout the county. It was shown that numerous witnesses who testified on the former trial in behalf of appellees were also substantial, well known citizens, among them being the County Tax Collector and Assessor, the County Auditor, a court reporter, the son of a former sheriff, a physician, a merchant, and certain bank employees. It must suffice to say that Franklin Jackson, his attorneys and many of the witnesses who testified in his behalf were shown to be well and favorably known over the county generally, they being separately and collectively among the most prominent and influential citizens in that section of the state.

However we do not think the good reputation or merited prestige of a defendant, or of his attorneys or witnesses, or a just combination thereof, necessarily constitutes sufficient ground under the provisions of Rules 257 and 258 to require the trial judge, solely by reason thereof and independent of any other considerations, to change the venue out of the county where the defendant resides. In our opinion such a construction would not be in harmony with sound public policy or with other established rules and principles of law. A good name ordinarily is and rightfully should be a benefit rather than a burden to its bearer by virtue of which he should be protected rather than penalized. A recognition of this axiom was doubtless one of the sound reasons which prompted the enactment of what is now Art. 1995 of Vernon's Tex.Civ.Stats., by which it is provided that no inhabitant of this state shall be sued out of the county in which he has his domicile except in certain cases. As said by the Supreme Court in the early case of Pool v. Pickett, 8 Tex. 122: "The cherished policy of the law is, that the inhabitants of the State shall be sued in the counties in which they respectively have their domiciles. This is the general rule— modified by certain exceptions specifically designated by the Statute. This was the rule under the former, or Spanish system of jurisprudence; and it has always been regarded as just in itself, and eminently advantageous to defendants, for whose benefit it was intended." Our courts have repeatedly and consistently held that the legal right of a defendant to be sued in the county of his residence is a valuable right of which he may not be deprived unless the case filed against him comes clearly within one of the exceptions found in the statute. Meredith v. McClendon, 130 Tex. 527, 111 S.W.2d 1062, points 3 and 4; Newlin v. Smith, 136 Tex. 260, 150 S.W.2d 233.

B. N. Jackson is the common source from which all asserted claims in this cause are deraigned. He lived and died in Limestone county where his principal property was acquired and situated at the time of his death. Having selected such county as his domicile and fixed place of residence, he had a right to assume that

if any litigation should arise after his death concerning the probate of his will or the administration of his estate, the venue for the trial thereof would be laid in that county. Art. 3293 of Vernon's Tex.Civ.Stats.; Balfour v. Collins, 119 Tex. 122, 25 S.W.2d 804; White v. Baker, Tex.Civ.App., 118 S.W.2d 319. The County Court of Limestone County was the only court in which appellants could properly institute this suit. Messer v. Carnes, Tex.Civ.App., 71 S.W. 2d 580. If they were aggrieved by the judgment rendered against them in that court, their sole remedy of review was by direct appeal therefrom to one of the District Courts of that county. Arts 3698 and 1995, Sub. 18, of Vernon's Tex.Civ.Stats.; Jones v. Wynne, 133 Tex. 436, 129 S.W.2d 279.

 We do not mean to say that the claimed right of appellees to be sued in the county of their residence, or any other consideration, would have necessarily deprived appellants of the paramount legal right to a change of venue if in fact they had shown in the manner required by law that they could not obtain or secure a fair and impartial trial in Limestone county. But under the state of the pleadings as developed, the burden undoubtedly rested upon them at the hearing of their contested application to establish by a preponderance of competent evidence the existence of the facts relied upon for the change of venue sought. Galveston H. & S. A. R. Co. v. Miller, Tex. Civ.App., 57 S.W. 702 (error ref.); A. H. Belo Corp. v. Blanton, 133 Tex. 391, 129 S.W.2d 619.

 We find no evidence which indicates that appellees, or any of them, or any of their attorneys or witnesses "instigated" any union, association, alliance, coalition or confederacy against appellants, or any of them. None of the persons whose affidavits were attached to the application was tendered as a witness at the hearing and consequently such affidavits could not properly be considered as evidence of any bias in favor of appellees, or any of them, or for any other purpose. Galveston H. & S. A. R. Co. v. Nicholson, Tex.Civ.App., 57 S.W. 693 (error ref.); Sands v. Sedwick, Tex.Civ.App., 174 S.W. 894 (error ref.). There was neither pleading nor proof tending to show any prejudice in Limestone county against appellants, or any of them. No witness testified or offered to testify on the hearing that in his opinion appellants could not obtain or expect a fair and impartial trial in that county by reason of a combination against them instigated by influential persons, if any, or because of such bias or prejudice, if any, or for any other reason or cause. On the record as a whole we cannot say the trial judge abused his discretion in refusing the application for a change of venue. T. A. Robertson & Co. v. Russell, 51 Tex.Civ.App. 257, 111 S.W. 205 error den.); Freeman v. Cleary, Tex.Civ. App., 136 S.W. 521 (error ref.); Barrow v. Barclay, Tex.Civ.App., 269 S.W. 235 (error ref.); Ferguson Seed Farms v. Fort Worth & D. S. P. R. Co., Tex.Civ.App., 100 S.W.2d 177; Clarkson v. Ruiz, Tex.Civ. App., 140 S.W.2d 206 (error dis.).

The testimony given by the members of the jury panel on the hearing of appellants' application for a change of venue was adopted as the evidence of each touching his service and qualifications as a juror in this case. On such voir dire examination seven of the thirty-four original members of the panel were excused for cause and sixteen asserted challenges for cause were each overruled, with the result that appellants were required, after exercising their six peremptory challenges, to accept ten jurors who were each objectionable to them. The alleged facts upon which each of the sixteen challenges was based, the action of the court thereon and the exception of appellants thereto, is properly shown in the record by separate bills of exception.

Art. 2133 of Vernon's Tex.Civ.Stats., prescribes the qualifications which all men over twenty-one years of age must possess in order to become competent jurors. Art. 2134 of said statutes enumerates the persons who shall be disqualified to serve as jurors in any particular case, including any person who has a bias or prejudice in favor of or against either of the parties. Art. 616 of Vernon's Tex. C. C. P. provides that a challenge for cause is "an objection made to a particular juror, alleging some fact which renders him incapable or unfit to serve on the jury," and sets forth certain reasons for any one of which such challenge may properly be made. Rule 228 of the Texas Rules of Civil Procedure, which is the same as the pre-existing provisions of Art. 2144 of Vernon's Tex.Civ.Stats., defines challenge for cause as "an objection made to a juror, alleging some fact which

**400**

by law disqualifies him to serve as a juror in the case or in any case, or which in the opinion of the court, renders him an unfit person to sit on the jury."

Bill Kennedy was the first member of the panel examined who was challenged for cause and later stricken from the jury list by the exercise of one of appellants' peremptory challenges. The first assignment germane to the second point in appellants' brief relates to his testimony. He testified, in substance, that he had lived in Limestone county all of his life; owned the farm on which he lived; had known J. E. and B. L. Bradley as long as he could remember, Scott Reed and L. W. Shepperd for ten or twelve years each, had known Carl Cannon for eight or ten years, but did not know any of the counsel for appellants; he had never been represented by the Bradleys, Reed, Shepperd or Cannon and was no better acquainted with them than he was with the other lawyers who lived in Limestone county; he had known Franklin Jackson for ten years, bought and sold cattle at his auction ring, but such purchases and sales were ordinary routine and when attending such sales he seldom spoke to Franklin Jackson; he knew appellant, Henry Bennett, who was Mayor of Coolidge, and went to school with some of the appellees other than Franklin Jackson when he was a boy; he knew B. N. Jackson for three or four years prior to the latter's death, had heard of the case and understood it had been tried once before, but had not heard the result of such trial; he had been well acquainted all his life with two of the witnesses on behalf of appellees and had known six of the other witnesses from five to twelve years; he owed some money to the Citizens National Bank in Groesbeck and had borrowed money from that bank at a time when one of the witnesses was connected with it; one of the witnesses whom he had known all of his life, a doctor, had treated his mother at some time; he did not think there was anything in his relationship or friendship with any of the witnesses that might cause him to give more credence to their testimony than to that of any other person; he had no prejudice against any of the relatives of B. N. Jackson who were attempting to set aside the will and his acquaintance with Franklin Jackson would not influence him in determining from the evidence such questions as might be submitted to the jury by the court.

The testimony of Kennedy was, we think, fairly typical of that given by the other five members of the panel who were challenged for cause and later removed from the list by appellants' exercise of their right to six peremptory challenges. It may be presumed that no one of the six veniremen who were thus stricken from the jury list was less objectionable to appellants than any one of the ten who were not so stricken. Without further statement from the voluminous testimony of the sixteen members of the panel who were challenged for cause, and regardless of the several grounds upon which the objection to each was based, we deem it sufficient to say that in our opinion the evidence adduced on the voir dire examination did not show conclusively that any one of such prospective jurors was lacking in the qualifications for jury service prescribed by Article 2133 of Vernon's Tex. Civ.Stats., or that any one of them was disqualified for such service under the provisions of Article 2134 of said statutes, or of Article 616 of Vernon's Tex. C. C. P. A challenge for cause not based on any ground mentioned in the statutes is ordinarily addressed to the sound discretion of the trial judge whose action thereon should not be disturbed on appeal unless it clearly appears that a fair and impartial trial was thereby prevented. Harrison v. Missouri K. & T. R. Co. of Texas, Tex.Civ.App., 89 S.W. 2d 455, point 2 and authorities (error dis.). Since we cannot say that any of the sixteen prospective jurors was disqualified by law, or that a clear abuse of discretion on the part of the trial judge was shown with respect to his rulings in connection therewith, all assignments based upon the organization of the jury must be overruled. Allbright v. Smith, Tex.Com.App., 5 S.W.2d 970; McIntosh v. Atchison T. & S. F. R. Co., Tex.Civ.App., 192 S.W. 285; Washington v. Austin Nat. Bank, Tex.Civ.App., 207 S.W. 382 (error ref.); Anderson v. Owen, Tex.Civ.App., 269 S.W. 454.

The testator was a bachelor at the time of his death. It was stipulated that both of his parents died prior to his death and he did not leave surviving him any wife, child, brother or sister or any direct descendant of either. Franklin Jackson was a cousin of the testator, was associated with him in business and was the principal beneficiary under the purported will which was dated June 17, 1931. Appellants introduced in evidence a photostatic copy of the original will. They also introduced numer-

ous letters, checks and documents which were shown to have been written at different times in the handwriting of the testator. They sought to establish the allegations relied upon for recovery by a comparison of the purported will with the admitted handwriting of the testator and by the testimony of a duly qualified handwriting expert who testified to the opinion, based solely upon such comparison, that the purported will was neither signed by nor written in the handwriting of the testator. Appellees produced eight witnesses who each testified, in substance, that B. N. Jackson had stated in the presence of each at various dates up to the time of his death on May 30, 1936, that he was leaving the bulk of his property to Franklin Jackson. Appellants seasonably objected to the introduction of the testimony of each witness upon the ground that such testimony was hearsay and too remote to constitute a part of the res gestae. They assign as errors the action of the court in overruling their objections and admitting the testimony. We have concluded that the objections so made were not tenable and that the testimony complained of was properly admitted in evidence. Compton v. Dannenbauer, 120 Tex. 14, 35 S.W.2d 682, 79 A.L.R. 1488; In re Williams' Estate, (Smith v. Mabry) Tex.Civ.App., 135 S.W. 2d 1078.

Appellees produced seven witnesses, some of whom testified that the handwriting in the body of the purported will was that of B. N. Jackson and others testified only to his signature. Appellants objected to the testimony of each on the ground that he had not shown himself qualified to give such testimony and they say the court erred in overruling such objections. No attempt was made to qualify any of these witnesses as a handwriting expert. Each testified, however, to facts showing the extent of his acquaintance and association with the deceased, his opportunities for the observations upon which his opinion was based and that he thought he knew the handwriting or signature of the testator. For example, Max Scharff, the first of the seven witnesses, testified that he had lived in Groesbeck about 36 years where he had been engaged in business; that he was well acquainted with B. N. Jackson during the last 12 years of the latter's lifetime; that he and the deceased traded in oil royalty and leases and the deceased was in his store as much as six times a week and sometimes more often than that. He was asked if he had seen "lots" of the testator's signatures and answered: "Yes." He was asked if he knew the testator's signature and answered: "Well, I think I do." When asked if he was acquainted with and would be able to identify such signature, his answer was: "I think I could." Colbert Gregory, cashier of Farmers State Bank in Groesbeck, who was the next of the seven witnesses, testified that he had been connected with the bank since the year 1923; that B. N. Jackson was a stockholder and director in the bank and, with Franklin Jackson, carried an account under the name of Jackson & Jackson, and borrowed money as such; that he had cashed "lots" of checks for the testator and by reason of his association he had occasion to see "a good deal" of the signatures of the testator and his writing of different kinds. When asked if he thought he had seen enough of the signatures and handwriting of the testator to know it, he answered: "I believe I would, Yes."

In our opinion, the grounds of the objections urged against the testimony of each of the seven witnesses were applicable, if at all, to the weight rather than to the admissibility of the testimony complained of. Although nonexperts, we believe each was shown to be qualified to discharge the duty of expressing his opinion on the matters under inquiry. Kveton v. Keding, Tex.Civ.App., 286 S.W. 673 (error dis.); Askins, Inc., v. Sparks, Tex.Civ.App., 56 S.W.2d 279 (error ref.); Latham v. Houston Land & Trust Co., Tex.Civ.App., 62 S.W.2d 519 (error dis.); Pitts v. Thompson, Tex.Civ.App., 71 S.W.2d 368 (error dis.). Consequently, we hold that the testimony of each witness was competent and admissible and the evidence as a whole afforded proper support for the verdict of the jury.

Finding no reversible error in the case, the judgment of the trial court is affirmed.