## McALESTER et al. v. SINCLAIR REFINING CO.

### No. 11034.

Circuit Court of Appeals, Fifth Circuit.

Dec. 8, 1944.

Otis Rogers, of Fort Worth, Tex., for appellants.

Alfred McKnight, J. A. Gooch, and V. R. Tomlinson, all of Fort Worth, Tex., for appellee.

Before HUTCHESON, WALLER, and LEE, Circuit Judges.

LEE, Circuit Judge.

Oliver McAlester, an employee of the Sinclair Refining Company, sustained injuries in the course of his employment from which he died. All actual damages resulting to appellants, the heirs at law of the decedent, were discharged in full by the compensation insurance carrier. This suit was brought by appellants to recover exemplary damages on the theory that the injuries sustained by the decedent were the direct and proximate result of the gross negligence of the Sinclair Refining Company, the cause of action being predicated upon Article 16, Section 26, of the Constitution of the State of Texas, Vernon's Ann.St., and the Workmen's Compensation Act of Texas, which provide, respectively:

"Every person, corporation, or company, that may commit a homicide, through wilful act, or omission, or gross neglect, shall be responsible, in exemplary damages, to the surviving husband, widow, heirs of his or her body, or such of them as there may be, without regard to any criminal proceeding that may or may not be had in relation to the homicide."

"Nothing in this law shall be taken or held to prohibit the recovery of exemplary damages by the surviving husband, wife, heirs of his or her body, or such of them as there may be of any deceased employé whose death is occasioned by homicide from the wilful act or omission or gross negligence of any person, firm or corporation from the employer of such employé at the time of the injury causing the death of the latter." Vernon's Ann.Civ.St.Tex. art. 8306, § 5.

At the conclusion of plaintiffs' case the court directed a verdict for the defendant on the ground that the evidence, as a matter of law, did not establish gross negligence, and from the judgment entered thereon this appeal was taken. The question before this court is whether there was evidence sufficient to raise an issue of gross negligence on the part of appellee proximately resulting in the death of the decedent.

The alleged acts relied on to establish gross negligence are these:

That the company

1. Caused an electric switch operating gasoline pumps to be placed inside a room where gasoline vapors and fumes were known to be present.

2. Required McAlester to perform his duties in a room not supplied with adequate ventilation or other means of carrying away the ever-present fumes.

3. Required McAlester to perform his duties with an electric switch known to the defendant to be defective and dangerous.

4. Required McAlester to perform his duties with an open switch instead of providing him with an explosion-proof switch.

McAlester, when injured, was doing the work of a regular pumper who was on a vacation, and had been performing such duties for about a week. He was working in a small house in which was installed a pump used for pumping gasoline from one tank to another. On top of the pump was a bleeder, which, when vapors interfering with the pumping were present in the line, was opened to permit the escape of the accumulated vapors. McAlester had worked as a pumper helper for several months; his regular duties required him to work at any pump or in any pump house. He was familiar with the equipment he was using and experienced in the work he was doing.

The pump house was built of corrugated iron strips and was about 14 by 16 feet in size, with two windows, one on each side, and large double doors in front. Vapors escaped into this building only when the bleeder was open. Two witnesses for appellant who operated this pump stated that they were instructed not to start the pump while the bleeder was open, for to do so would result in spraying gasoline all over the house. They also testified that the superintendent of the appellee had instructed them to open the doors and windows when starting the pump, and to keep them open while the pump was operating.

At the time of the explosion, McAlester was alone in the pump house and in charge of it. Owens, an employee of the defendant, on hearing the explosion ran towards it and met McAlester, whose clothes were then aflame, and upon asking McAlester what happened was told that "the switch set it off." This was the only evidence that the explosion was caused by the electric switch. Whether "the switch set it off" through normal operations or because of some defect in the equipment was not shown. Whether it was in any respect defective or performed improperly at the time likewise was not shown. Whether it sparked or whether there were excessive vapors accumulated in the building was not revealed. Whether McAlester had opened the bleeder to permit gasoline and vapors to escape while the motor was running was not indicated.

The pumps had been in use for some three years prior to the accident. The contacts of the electric switch which started and stopped the pump were buried in oil to protect against sparks that might be caused when contact was made. There had been some trouble with this switch, but the evidence shows that such troubles were of a minor nature. One pumper had been unable to start the motor, and an electrician was called who found the trouble to be with the points. He stated that he dressed the points and that this eliminated the trouble. On another occasion a window and the doors to the pump house were left open during a storm, and the inside of the switch became wet and "shorted-out" on the outside of the building. The trouble was repaired and thereafter the switch operated satisfactorily. The electrician testified that it was his duty to make electrical repairs in the plant, and that, after repairing the switch on the two occasions mentioned, the switch and the electric system were left in good shape.

Following the explosion the pump room was examined and the electric switch was found disconnected; nothing was found to show the cause or manner of the explosion, and no one could tell what had happened. Evidence was introduced to show that explosion-proof switches with all wiring enclosed were available, and that some of these switches were in use in appellee's plant; and it is argued that failure to use an explosion-proof switch in the pump house where gasoline vapors were present showed gross negligence. We do not agree. The equipment used was shown to be standard equipment and in good repair. There was no proof that a spark from the electric switch caused the explosion. This switch had been in use for several years, the starter points were embedded in oil to protect against sparks, and prior to the explosion in question there had never been an explosion at appellee's plant.

What constitutes gross negligence entitling recovery of exemplary damages

from one responsible therefor, where death of another results, is thus defined by the Supreme Court of Texas in Texas Pacific Coal & Oil Co. v. Robertson et al., 125 Tex. 4, 79 S.W.2d 830, 831, 98 A.L.R. 262:

"The definition of gross negligence which has probably been quoted oftener than any other by the courts of this state is that given by Judge Stayton in Missouri Pacific R. Co. v. Shuford, 72 Tex. 165, 10 S.W. 408, 411, and is as follows: 'Gross negligence, to be the ground for exemplary damages, should be that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the rights or welfare of the person or persons to be affected by it.'

"Similar definitions are given in Southern Cotton Press, etc., Co. v. Bradley, 52 Tex. 587, and International & Great Northern R. Co. v. Cocke, 64 Tex. 151.

"It is to be observed that the definition quoted uses the words 'conscious indifference,' thus stressing the mental attitude of the person charged to have been grossly negligent. Gross negligence is positive or affirmative, rather than merely passive or negative as ordinary negligence often, and perhaps usually, is. As said in the discussion in Ruling Case Law of the right to recover exemplary damages for gross negligence: 'The rule is that recovery is permitted, in, and confined to, cases where the negligence is wilful, or where it is so gross as to indicate wantonness or malice.' 8 R.C.L., p. 590. Mere indifference is not enough. The indifference must be conscious. The indifference is to the rights or welfare of the person or persons who may be affected by the act or omission. Thus the doctrine of foreseeableness becomes important."

In 13 Texas Jurisprudence 241, the rule is stated as follows: "In order that a recovery of exemplary damages may be sustained, the plaintiff must show, not merely that the defendant could have or ought to have foreseen and prevented the loss or injury of which the plaintiff complains, but that he acted intentionally, or wilfully, or with a degree of 'gross negligence' which approximates a fixed purpose to bring about the injury of which the plaintiff complains. The mental factor is also described in the reports by the terms 'malice,' 'fraud,' 'oppression,' 'recklessness,' and the like. Regardless of the expression which is used to describe it, the purpose or intention of the defendant is determinative of his liability for exemplary damages."

There is no evidence in this case of gross negligence on the part of appellee. Indeed, under the evidence nothing had occurred to make the explosion even foreseeable, and it could well be that the explosion was the result of some act on the part of McAlester that created a situation of danger not present under ordinary conditions. We agree with the court below that "the law did not require defendant to have in that building a non-explosive switch. * * * Under the circumstances it was only required to furnish a switch that was reasonably safe for the purpose used, in the place used."

The court below rightly directed a verdict for defendant.

Judgment affirmed.