CAGLE v. McQUEEN et al.

TEXAS EMPLOYERS' INS. ASS'N v. GULF OIL CORP.

McQUEEN et al. v. CAGLE.

GULF OIL CORP. v. CAGLE.

No. 13955.

United States Court of Appeals Fifth Circuit.

Dec. 2, 1952.

Rehearing Denied Jan. 19, 1953.

John F. Tomlin, Pecos, Tex., for Texas Employers Ins. Assn., John J. Watts, and Jerome J. Pope, Odessa, Tex., for Mrs. Marilyn Cagle.

William L. Kerr, Midland, Tex., for McQueen & Stout.

Wyndham K. White, El Paso, Tex., for Gulf Oil Corp.

Before HUTCHESON, Chief Judge, and BORAH and RIVES, Circuit Judges.

RIVES, Circuit Judge.

This action was for the alleged wrongful death of Ray E. Cagle brought by appellant, his widow, Mrs. Marilyn Cagle, for herself and as guardian for their minor son, Danny Ray Cagle.

Mr. Cagle, a long time employee of McQueen and Stout, was a member of a drilling crew working in the drilling of a well for oil and gas for Gulf Oil Corporation. On June 11, 1949, an accident occurred which resulted in his death. While the drill bit and drill stem were being lowered into the hole, they suddenly stopped causing slack to come in the wire lines on the drilling rig. One of the lines

jumped the sheave or pulley on the drilling rig. Thereafter, the drill went through the obstruction and when the weight of the drill pipe and stem struck the slack line, the line broke. The broken end of the line struck Mr. Cagle causing injuries which resulted in his death.

The plaintiff alleged that McQueen and Stout negligently failed to furnish Cagle a reasonably safe place to work, that they were operating a drilling rig without a guard on the sheave or pulley to keep the drilling line from jumping the sheave, and that such failure was gross negligence within the Texas law making an employer liable in exemplary damages over and above the compensation provided by the Workmen's Compensation Act.[1]

As against Gulf Oil Corporation, the plaintiff claimed that it furnished the pipe used by McQueen and Stout on the occasion in question, that said pipe was not safe in that it contained burps or defects, that Gulf failed to make a "manifold or rabbit test" to discover any defects or burps in the pipe, and that such failure was the proximate cause of the accident and the resulting death of Mr. Cagle.

Originally there were other defendants, Lee C. Moore Corporation, as to which the District Court directed a verdict and no appeal has been taken therefrom, and Gulf Production Co., as to which the plaintiff dismissed her case. Texas Employers Insurance Association filed its plea of intervention seeking to recover against Gulf Oil Corporation any sums paid out by it under its Workmen's Compensation policy on McQueen and Stout.

At the close of the plaintiff's testimony, the defendants, McQueen and Stout and Gulf Oil Corporation, each made a motion for directed verdict which motions were denied. The jury verdict, however, was in all things in favor of each defendant. Mrs. Cagle, individually and as guardian, prosecutes her appeal against the judgment in favor of McQueen and Stout. Texas Employers Insurance Association joins her in prosecuting appeal against Gulf Oil Corporation. McQueen and Stout and Gulf Oil Corporation each cross appeal to present the question of whether the court erred in refusing to direct a verdict for such defendant.

The main appeal presents nine points for decision:

Point No. 1: A prospective juror, Don Payte, testified upon *voir dire* examination that due to his business relationships with McQueen and Stout, it would be embarrassing to him to have to render a verdict against McQueen and Stout. He testified, however, "that he could and would return a verdict based solely upon the law and evidence and that in the return of such verdict, he would not be influenced by his knowledge of or his relationship with the defendants McQueen and Stout." The Trial Court overruled the plaintiff's challenge for cause as against such venireman and the plaintiff had to exercise a peremptory challenge on him. The plaintiff exhausted her peremptory challenges and insists that there were other jurors whom she desired to challenge.

■■■ 28 U.S.C.A. § 1861(4), provides that no one "is competent to serve as a grand or petit juror unless" he is competent so to serve "by the law of the State in which the district court is held." Article 2134 of the Revised Civil Statutes of Texas 1925, provides that a person shall be disqualified to serve as a juror who has a bias or prejudice in favor of or against either of the parties. Appellant insists that as a matter of law Don Payte was not a qualified juror under the Texas statute. That statute merely emphasizes the universal rule that a biased or prejudiced juror is not competent to serve. Whether, despite his denial, Don Payte was biased or prejudiced was a question of fact to be determined by the district court,[2] and we can-

---

1. That Texas law has been considered by this Court in McAlester v. Sinclair Refining Co., 5 Cir., 146 F.2d 36, and in Phillips Oil Company v. Linn, 5 Cir., 194 F. 2d 903.

2. "All challenges for cause or favor, whether to the array or panel or to individual jurors, shall be determined by the court." 28 U.S.C.A. § 1870.

not say that its determination was clearly erroneous.[3]

■ Point No. 2: The District Court denied the plaintiff's motion for a new trial based in part on the alleged prejudice of the juror, Verner E. Danielson. The plaintiff supported this ground of the motion with an affidavit from Danielson himself to the effect that a few days before the trial he had stated in substance to a lawyer friend in connection with the litigation "that I had heard something about a lawyer who had most of the damage suit cases in that Court, and from what I had heard I had concluded that he was using the Court for a sort of racket which I did not approve of, and that for that reason I probably would not be accepted as a juror in any case that this lawyer was trying"; that at the time he made the statement, he may not have known the lawyer's name to whom he referred but at the time of the making of the affidavit, he knew that it was John Watts; that "I listened carefully to all of the evidence and to the Court's charge. I sincerely believe that I followed the Court's charge and gave my decision as fairly as if I had never heard anything which prejudiced me against Mr. Watts. I do not believe that anything I had previously heard or any opinions I had about Mr. Watts, personally, in any way affected * * * my decision."

Assuming the admissibility of the affidavit[4] it does not show that Mr. Danielson was not competent to serve as a juror, nor does it disclose anything improper on his part in determining the fact issues which were submitted for jury determination.

■ Point No. 3: The court in charging the jury on gross negligence necessary to be established as against the defendant, McQueen and Stout, defined gross negligence as follows: " 'Gross negligence' to be ground for exemplary damages, should and must be that entire want of care which would raise the belief that the act or omission complained of was result of a conscious indifference to the rights or welfare of the person to be affected by it. The purpose or intention of defendants, McQueen and Stout is determinative of their liability." The plaintiff excepted particularly to the last sentence of the foregoing definition insisting that the court thereby instructed the jury in effect not to find for the plaintiff unless the plaintiff proved a case of wilfulness. The plaintiff insists that the criticised expression is taken from 13 Texas Jurisprudence, p. 241, Sec. 133, which authority cites for the proposition Jacobs v. Crum, 62 Tex. 401, and that that case was a malicious prosecution suit in which malice was an essential ingredient in the claim for exemplary damages. The appellees cite the case of Bennett v. Howard, 141 Tex. 101, 170 S.W.2d 709, and the case from this Court of McAlester v. Sinclair Refining Co., 5 Cir., 146 F.2d 36, in each of which cases the language used in Texas Jurisprudence is cited with approval. The Appellees insist that "the phrase complained of by the plaintiff does not apply to whether or not the defendants purposely, or intentionally, injured the deceased. It inquires what was the purpose or intent of the defendant in doing what he did."

The appellees further insist that the charge should be construed as a whole and that after defining gross negligence the district judge further charged the jury in such terms as to remove any possible injury from the phrase to which the plaintiff objected.

Considered by itself, the criticised expression might mislead the jury to apply

---

3. Kiel v. Mahan, Tex.Civ.App., 214 S.W.2d 865; Allbright v. Smith, Tex.Com.App., 5 S.W.2d 970; Bennett v. Jackson, Tex. Civ.App., 172 S.W.2d 395; Harrison v. M. K. & T. Railroad Co., Tex.Civ.App., 89 S.W.2d 455. See also Texas & Pacific Railway Co. y. Hill, 237 U.S. 208, 214, 35 S.Ct. 575, 59 L.Ed. 918; United States v. Dennis, 2 Cir., 183 F.2d 201, 228; Green v. United States, 9 Cir., 19 F.2d 850; and Belvin v. United States, 4 Cir., 12 F.2d 548, 550.

4. See McDonald v. Pless, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300; Eagle Lake Improvement Co. v. United States, 5 Cir., 160 F.2d 182; Pacific Employers Insurance Co. v. Orren, 5 Cir., 160 F.2d 1011; and Southern Pacific Co. v. Klinge, 10 Cir., 65 F.2d 85.

the test of purposeful or intentional wrong to the conduct of defendants, McQueen and Stout. In context, however, following the expression, "conscious indifference, etc.", and followed by a further charge leaving it open to the jury to find whether "the failure to have a guard across said sheave constitutes gross negligence", we are of the clear opinion that the use of this expression was not prejudicial error.

■ Point No. 4: The district judge in charging the jury defined contributory negligence and the plaintiff excepted because no issue had been made in the case as to contributory negligence. McQueen and Stout did plead that the conditions about which complaint was made were open and obvious and that Mr. Cagle, with full knowledge of the conditions, continued his work. There was no charge other than the definition of the term contributory negligence without attempt to apply it to the facts in this case. Without reference to whether it would have been proper to submit to the jury the issue of contributory negligence,[5] it seems clear that the mere definition of the term did not constitute prejudicial error as to the appellant.

■ Point No. 5: The district court submitted to the jury the issue of unavoidable accident as to each of the defendants, stating that by that term the court meant an accident that occurred without fault or negligence of either the plaintiffs or the defendants. All parties to this case denied negligence on their respective parts. McQueen and Stout expressly pleaded that "the accident was an unavoidable one as between Ray E. Cagle and these defendants." The cause of the obstruction in the pipe was hardly proved at all, certainly not conclusively. It was proper to submit to the jury for determination the issue of unavoidable accident.

■ Point No. 6: The district judge overruled the plaintiff's objection to the following argument of one of the attorneys for McQueen and Stout. "Gentlemen of

the jury, McQueen and Stout are not being asked for actual damages since they have already discharged their liability for actual damages to the plaintiff." The plaintiff in her complaint set out that she was then being paid Workmen's Compensation Insurance as the result of the death of her husband and had it not been for the fact that he was covered by compensation insurance that the plaintiff could and would have been entitled to recover actual damages against McQueen and Stout. That pleading was read to the jury. It would seem that the argument did not go beyond the record and was proper. In any event, the grounds of objection are not sufficiently specified to comply with Rule 46, F.R.C.P., 28 U.S.C.A.

■ Point No. 7: Under this point, the plaintiff takes exception to the district judge's charging the jury that "If you find from preponderance of the evidence that the driller, McQueen and Stout, was an independent contractor and that the negligence of the independent contractor McQueen and Stout was proximate cause of the accident and that Gulf Oil Corporation was not guilty of negligence which was a proximate cause of the accident, then you will return your verdict for the defendant Gulf Oil Corporation." Assuming a proper objection to the charge, the appellant now invokes the doctrine of inherently dangerous work. That doctrine imposes liability on an employer for the protection of third persons, not for the protection of the employees of an independent contractor. Certainly that is the law in Texas. Union Tank & Supply Co. v. Kelley, 5 Cir., 167 F.2d 811, 816 citing Humble Oil & Refining Co. v. Bell, Tex.Civ.App., 180 S.W. 2d 970, 975.

■ Points Nos. 8 and 9: These points are directed to the action of the district judge in refusing to permit the plaintiff to prove that McQueen and Stout used guards over the sheaves immediately following the accident. It seems clear that that evidence was not admissible.[6]

5. See Bonner v. Texas Co., 5 Cir., 89 F. 2d 291; Kuptz v. Ralph Sollitt & Sons Const. Co., 5 Cir., 88 F.2d 532; Fort Worth Elevators Co. v. Russell, 123 Tex. 128, 70 S.W.2d 397, 408; and United Gas

Corp. v. Crawford, 141 Tex. 332, 172 S. W.2d 297.

6. S. Blickman, Inc. v. Chilton, Tex.Civ. App., 114 S.W.2d 646; Fleming Oil Co. v.

It is not necessary to pass upon the contentions of McQueen and Stout and Gulf Oil Corporation that the court erred in refusing to direct a verdict for such defendant. No prejudicial error being shown, the judgment is

Affirmed.

Watts, Tex.Civ.App., 193 S.W.2d 979; Texas Co. v. Brown, Tex.Civ.App., 82 S. W.2d 1101; and 17 Texas Jur., p. 565, Sec. 234.